Rafael San MILLAN, Jr.,

v.

The UNITED STATES.

No. 182–54.

United States Court of Claims.

July 12, 1957.

Paul R. Harmel, Washington, D. C., Geiger & Harmel, Washington, D. C., on the briefs, for plaintiff.

John R. Franklin, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff brings suit to recover disability retired pay of which plaintiff alleges he was deprived by the arbitrary actions of the Department of the Army.

Plaintiff contends that on the facts established by the record in this case, he had become totally and permanently incapacitated for active duty by reason of a disability incurred as an incident of his active military service and was therefore entitled to disability retirement and pay at the time of his separation from the service on March 20, 1946.

Defendant contends that plaintiff has failed to establish facts which would warrant such conclusions and, in addition, that plaintiff may not recover in any event because this court lacks jurisdiction of his claim for the reasons that (1) under applicable law, only the President or his administrative officers may determine whether or not a military officer is incapacitated for active service and (2) plaintiff's claim is barred by the six-year statute of limitations applicable to suits in this court because his separation from active duty took place more than six years prior to the filing of his petition.

■ Considering first defendant's argument concerning the bar of the statute of limitations, the majority of the court has for some time past taken the position that a suit for disability retired pay is not barred where the claim is based on an alleged arbitrary refusal to grant a hearing or, if a hearing has been granted, on an alleged arbitrary determination that the plaintiff was not permanently incapacitated for active service by reason of service incurred disability at the time of his separation from active duty where the refusal or determination occurred within six years of the filing of the petition. On the basis of those decisions, plaintiff's claim is not barred since the alleged arbitrary actions of the Adjutant General all took place within six years of the filing of plaintiff's petition herein.[1]

With reference to defendant's other jurisdictional argument, it seems to be defendant's position that the Department of the Army has a sort of exclusive jurisdiction to determine eligibility for disability retirement benefits in the same manner as the Veterans' Administration has exclusive jurisdiction to determine finally all questions of law or fact concerning eligibility for benefits or payments under acts administered by the Veterans' Administration. See 54 Stat. 1193, 1197, § 11, 38 U.S.C.A. § 11a–2.

■ The statutes covering disability retirement and disability retirement pay confer no such *exclusive jurisdiction* on the administering government agency. While it is true that this court cannot confer the status of disability retirement on a member or former member of the armed forces, any more than it can restore a wrongfully discharged civil service employee to his job with the Federal Government, it has long been held that this court has jurisdiction to render judgment for the pay which was denied the claimant by the arbitrary or capricious actions of the administrative agency of the Government. Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L. Ed. 561; Uhley v. United States, Ct.Cl.,

---

1. Under my view of the applicability of the statute of limitations to claims for disability retired pay, expressed in a number of dissents, so much of plaintiff's claim for pay as accrued more than six years prior to the filing of his petition would be barred.

147 F.Supp. 497; Gordon v. United States, 121 F.Supp. 625, 129 Ct.Cl. 270; Suter v. United States, Ct.Cl., 153 F. Supp. 367.

The next question is whether or not the Army acted arbitrarily and capriciously in denying plaintiff a hearing and in refusing to confer upon plaintiff the status of disability retirement, with pay. Plaintiff contends that such actions of the Army were arbitrary and capricious because the record in this case establishes that at the time of plaintiff's separation from military service on March 20, 1946, he was totally and permanently incapacitated for active military service by reason of a disability incurred in line of duty. The facts established by the record are set forth in detail in the findings of fact and will only be summarized herein.

Plaintiff, who for 19 years had been a member of the National Guard in Puerto Rico, was called to active duty in the Army of the United States on October 15, 1940. Prior to that time plaintiff had enjoyed good health and had led an active business and social life. He was a man of slight build, being approximately 5 feet 6 inches in height, and at the time of his pre-induction physical examination in December 1940, his weight was 127½ pounds. Beginning sometime in 1943, and continuing throughout the remainder of plaintiff's active military service, he complained to brother officers of abdominal pain. He neither sought nor received medical treatment from the Army physicians or from private physicians for these symptoms while on active duty because the pain would finally disappear without the need for treatment. While plaintiff was stationed in Hawaii during the last year of his service, he continued to suffer with these pains but told brother officers that he did not want to report to the hospital for treatment because such action on his part might have a bad effect on the morale of the men under his command.

Despite plaintiff's abdominal discomfort, at the time of his terminal physical examination in December 1945, plaintiff's weight had increased to 131 pounds and his chest and waist measurements had also increased. The report of his examination showed him to be qualified in all ways for full military service. Plaintiff does not suggest that the examination was superficial. Plaintiff's terminal leave expired on March 20, 1946, and he was released from active service, not by reason of physical disability.

In April 1946, plaintiff returned to work as a field engineer for his former employer, the Puerto Rico Construction Administration. In May 1946, plaintiff consulted a private physician, Dr. Fernandez, in Puerto Rico, in connection with his abdominal pain. Dr. Fernandez usually treated plaintiff in plaintiff's home and diagnosed plaintiff's ailment as a suspected duodenal ulcer.

In November 1946, plaintiff ceased working for the Puerto Rico Reconstruction Administration because of the increased intensity and frequency of his attacks of abdominal pain, and in June 1947, plaintiff entered the San Patricio Veterans' Hospital in Puerto Rico for examination and treatment.

During plaintiff's hospitalization in June 1947, gastro-intestinal X-rays were taken and his stool was examined, both with negative results. Insofar as his abdominal symptoms were concerned, the diagnosis of the Veterans' Hospital was that the pain was caused by psychoneurosis, anxiety.

In the summer of 1947, plaintiff and his family moved to Falls Church, Virginia, where plaintiff has since lived. Plaintiff then became the patient of Dr. Podolnick, a private physician, who treated him for nervous spasm of the intestines with anti-spasmodic drugs and sedatives until the winter of 1948. During that time plaintiff continued to lose weight, had poor appetite, and suffered from increasing abdominal pain. He did not attempt to work until late in 1948, when he secured a job as salesman for Sears Roebuck and Company, in Arlington, Virginia.

In January 1949, plaintiff entered Mt. Alto Veterans' Hospital in Washington, D. C., where he again received a complete physical examination, including gastro-intestinal X-rays. By that time plaintiff's weight had gone down to about 100 pounds.

On February 11, 1949, plaintiff was operated on, and approximately five inches of the large intestine were found to be malignant and were removed along with a large segment of Gerota's capsule and the peri-renal fat tissue.

In April 1949, the Veterans' Administration began an investigation to determine whether or not plaintiff's cancer was service connected. It was ultimately determined that plaintiff's disability was service connected, he was rated 100 percent disabled as of January 28, 1949, and granted the proper disability pension.

In the spring of 1949, following his discharge from Mt. Alto Veterans' Hospital, plaintiff returned to his position of salesman for Sears Roebuck and Company in Arlington. On November 15, 1949, plaintiff applied to the Department of the Army for disability retirement, with pay, and, at plaintiff's request, the Veterans' Administration forwarded to Army officials a statement concerning plaintiff's medical record with the Veterans' Administration.

On February 9, 1950, the Adjutant General wrote to plaintiff advising him that his entire record, including his letter and the statement furnished by the Veterans' Administration, had been carefully reviewed by competent medical authorities in the Department of the Army and that it had been determined that the defect from which plaintiff was suffering was not considered to have been incapacitating for general military service while plaintiff was on active duty. The Adjutant General advised plaintiff that under the circumstances, plaintiff's appearance before a physical evaluation board (formerly an Army retiring board) did not appear to be warranted. The letter also pointed out that plaintiff's eligibility for a disability pension from the Veterans' Administration was determined under statutes quite different from those covering his right, if any, to disability retirement benefits.

On August 3, 1950, the Disabled American Veterans organization wrote on plaintiff's behalf to the Adjutant General requesting that plaintiff be allowed to appear before a physical evaluation board to determine his eligibility for disability retirement. In support of this application there was submitted an affidavit of a brother officer of plaintiff who stated that he had served with plaintiff in World War II and that during that time plaintiff had suffered frequently from severe stomach pain but had not sought medical treatment because the pain would disappear without such treatment. There were also submitted an affidavit of plaintiff's doctor in Puerto Rico, Dr. Fernandez, concerning his treatment of plaintiff's condition as duodenal ulcer, and a deposition made by Dr. Fernandez before a field examiner of the Veterans' Administration concerning the basis on which he made the affidavit submitted. The deposition and the report of the field examiner (also submitted with this application to the Army) revealed that Dr. Fernandez had kept no office records on plaintiff and had made the affidavit from memory. An affidavit of Dr. Podolnick of Falls Church, Virginia, was submitted concerning his treatment beginning in the summer of 1947. Plaintiff's medical records in the Veterans' Administration were submitted, along with the statement of the Veterans' Administration, which had been previously submitted to the Adjutant General, concerning plaintiff's treatment at Mt. Alto Hospital, and the granting of a Veterans' Administration disability pension on the basis of 100 percent disability incurred by plaintiff in active military service.

On September 21, 1950, the Adjutant General wrote to the Disabled American Veterans organization stating that the application for an opportunity for plaintiff to appear before a physical evaluation board had been considered in the light of plaintiff's entire record, including the material submitted by plaintiff;

that the record had been carefully reviewed by competent medical authorities in the Department; that the record revealed that plaintiff had served from October 15, 1940 to March 20, 1946, on active duty and that during that time he had not sought medical treatment for any gastro-intestinal condition; that plaintiff's terminal physical examination on December 4, 1945 revealed no defect rendering plaintiff unfit for military service, and that his release from active duty was not due to physical disability. The letter noted that under applicable law, one of the primary requisites for establishing eligibility for disability retirement pay benefits was that the individual must have been unfit to perform his duties while serving on active duty. The Adjutant General was of the opinion that plaintiff had failed to establish that requisite and that his appearance before a physical evaluation board was therefore not warranted.

On August 25, 1952, plaintiff filed an application with the Army Board for the Correction of Military Records to have his record corrected to show him eligible for disability retirement pay. In support of this application plaintiff submitted the same documents which had accompanied his previous application to the Adjutant General, and in addition plaintiff submitted two additional affidavits. One affidavit was by Colonel Rafael Morla who had served with plaintiff from 1940 to 1945 and had known plaintiff for more than 15 years. Colonel Morla stated that from May 1945 to October 1945 plaintiff had been in poor health and was constantly complaining of abdominal pain, but that plaintiff had refused to report to a hospital because he preferred to stay with the men in his command. Colonel Morla stated that he saw plaintiff following his separation from the service and that his health had grown increasingly worse. Colonel Morla stated that prior to plaintiff's entry on active duty in 1940, he had enjoyed excellent health.

The other affidavit submitted to the Correction Board was that of Guillermo Esteves, Assistant Administrator of plaintiff's employer in Puerto Rico. Mr. Esteves stated that he had known plaintiff for 20 years; that his health had been good prior to his entry on active service in 1940, but that after his return to the Administration to work in April 1946, plaintiff had been frequently ill, and in November 1946 had been compelled to resign.

In June 1953, plaintiff was reexamined by the Veterans' Administration which found his condition to have so improved that his disability rating was reduced from 100 percent to 20 percent. By that time plaintiff's weight had increased to 138 pounds and he no longer suffered from abdominal pain, although he tired easily and engaged in little if any social life.

On April 23, 1954, at the request of the Army Board for the Correction of Military Records, the Acting Adjutant General wrote plaintiff advising that a thorough examination of all the records and the information submitted by plaintiff failed to reveal material evidence of error or injustice in plaintiff's records regarding his separation from military service, not by reason of physical disability, on March 20, 1946, sufficient to warrant a formal review of his case by the correction board, and that in the absence of additional material evidence, no further action on plaintiff's application was contemplated.

The documents introduced in evidence herein are those which were submitted by plaintiff to the Army Board for the Correction of Military Records. Some, but not all, of those documents had been submitted in support of plaintiff's previous applications for hearings before a retiring board and a physical evaluation board. In addition to that evidence, and in further support of plaintiff's contention that the Army acted arbitrarily, plaintiff offered in evidence the testimony of two medical experts. Neither of these physicians had testified before the Army Boards, since no hearings were granted or held, and for that reason defendant objected to the admission of

their testimony to prove that the boards had acted arbitrarily. The commissioner of the court permitted the introduction of this evidence and findings have been made concerning the testimony objected to. The commissioner's ruling was correct and is approved.

The two physicians were called as witnesses by plaintiff to testify as experts on the questions (1) whether plaintiff's disability was service connected, and (2) whether at the time of plaintiff's release from active service plaintiff was incapacitated for such service. The opinions which these two physicians were called upon to express have, of course, a direct bearing upon the ultimate issue to be decided in this case, and accordingly, the use of such expert testimony is warranted only if the inferences to be drawn therefrom are so distinctively related to some science, profession or occupation as to be beyond the ken of the average layman.

On the question of whether or not the cancer from which plaintiff was ultimately found to be suffering was incurred during the period of his active military service, we suppose the use of expert medical testimony might well be of assistance to the court and therefore warranted. However, the various boards which passed on plaintiff's applications did not deny his claim on the ground that service connection had not been established, but rather on the ground that he had failed to establish *incapacity for active duty at the time of his discharge from service*. On that question, the opinion of medical experts who had had no opportunity to see or examine plaintiff at the time of his discharge or for some time thereafter, may or may not be of probative value depending upon the nature of the ailment, the facts and circumstances of the case, and the bases on which the opinions were given.

Both of the medical witnesses who testified based their opinions on the evidence already of record in the trial and, as noted above, that evidence consisted of the documents and medical records which had been submitted by plaintiff to the Army Board for the Correction of Military Records. After an examination of those records, the Adjutant General had concluded that they did not tend to establish the fact that plaintiff was incapacitated for active service at the time of his discharge and had accordingly denied plaintiff a formal hearing on his applications. After their examination of the same records, plaintiff's two medical witnesses were of the opinion that plaintiff must have been incapacitated for active duty at the time of his discharge in March 1946.

Dr. Inguagiato, who was the surgeon who had assisted at the operation performed on plaintiff at Mt. Alto Veterans' Hospital in February 1949, expressed the opinion that plaintiff's cancer probably had its inception during the period of his active military service. As noted above, this opinion was based on the evidence which had been tendered to the Adjutant General and made a part of the record in this case, including particularly plaintiff's medical records which contained a comparison of the X-rays of plaintiff's gastro-intestinal tract taken by the Veterans' Administration in 1947 and in 1949. The comparison and interpretation of these two sets of X-rays had been made by a Dr. Bersack, Chief of the X-ray Department of the Veterans' Administration in Washington, D. C. Dr. Bersack did not testify at the trial of this case. Dr. Bersack's written report, introduced in evidence and shown to Dr. Inguagiato during his testimony, indicated that the 1947 films showed slight if any evidence of abnormality, but that viewed in comparison with films of the same area in 1949, it was possible to see evidence of the defect which was quite clear on the 1949 films. (Finding 25.) Dr. Inguagiato conceded that it was difficult to determine with exactness when this defect first had its inception, but he was of the opinion that, in view of the extent to which the cancer had spread at the time of the February 1949 operation, it was quite probable that the cancer had

been in existence at the time of plaintiff's discharge from military service in 1946.

Dr. Inguagiato then expressed the opinion that although he had not seen plaintiff prior to his admission to Mt. Alto Veterans' Hospital in January 1949, and despite the fact that plaintiff had apparently performed full military service up to the time of his discharge in March 1946, he must have been totally incapacitated for such service at the time of his discharge.

Dr. Podolnick, plaintiff's private physician, was the other medical witness for plaintiff. On the basis of his knowledge of plaintiff's condition from the summer of 1947, and on the basis of the evidence introduced at the trial, all of which evidence had been before the correction board, Dr. Podolnick expressed the opinion that plaintiff must have been incapacitated for active military service by reason of cancer at the time of his discharge.

We have given serious consideration to the opinions expressed by the two medical experts who testified, both in the light of their qualifications, and in the light of the bases on which they reached the opinions expressed, and we have reached the conclusion that while the admission of their testimony was not erroneous, their testimony was of no probative value in view of all other facts and circumstances of record. Cf. The Conqueror, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937. On the matter of plaintiff's incapacity for active service prior to discharge, the record contains no direct evidence which was not before the Army Board for the Correction of Military Records, and the only direct evidence bearing on such incapacity is the affidavits of brother officers that plaintiff had complained from time to time of abdominal pain. On the other hand, the records which were before the boards and before this court establish that plaintiff never sought medical treatment for such abdominal pain and that on the occasion of his terminal physical examination in December 1945, plaintiff was then found to be in good physical condition and fit for full active service. There is no assertion that the terminal physical examination was a superficial one or that plaintiff even disclosed to the doctors at that time the fact that he had suffered frequent abdominal symptoms. These latter facts were called to the attention of the medical witnesses who then pointed out that a good soldier, which plaintiff was, might well go on performing his military duties satisfactorily although in exceedingly poor health. While we do not doubt that such might be the case, we think that the record in this case does not establish that this was the situation during the final months of plaintiff's active military service. While plaintiff may have had incipient cancer of the intestine during the later part of his active military service, the symptoms were not then disabling and we know of no Army regulation which lists cancer as a disease, the presence of which renders an individual unfit for military service. Under recognized medical principles, a cancer such as that from which plaintiff was suffering can often be arrested, if not eliminated altogether, by an operation during the early stages. In this case, an operation performed nearly four years after plaintiff's discharge, has apparently completely arrested the condition and plaintiff's present poor health which would undoubtedly disqualify him for active service at this time, does not appear to have any connection with the cancer which was removed in 1949.

■ We are of the opinion that plaintiff has not established that he was incapacitated for active service at the time of his discharge in 1946, or that the Army acted arbitrarily in refusing to grant him a formal hearing on his applications therefor, or in denying him disability retirement with pay. Accordingly, plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, concurs in the result.