Davis, Judge,
delivered the opinion of the court:
Plaintiff sues for disability retirement pay denied bim by the Navy. His petition, filed on February 1,1962, shows *89 that he served as a naval reserve officer on active duty from January 5,1942 to November 25,1945, when he was released as a lieutenant commander (not for physical disability). As a result, he alleges, of his arduous experiences in combat in the Pacific in 1943-1944, he suffered a mental and emotional collapse and had to be transferred to the continental United States for treatment. After a period of hospitalization and some five or six months of further duty he was separated. He did not ask for or appear before a Retiring Board at any time, nor was one offered to him. Two Medical Survey Boards reported on his condition some time before his release, one on March 5,1945 and the other on April 26,1945. Several years later — his petition recites a continuing history of mental illness and incapacity — he applied to the Board for Correction of Naval Records to grant him disability retirement pay. On January 9, 1962, that Board denied his application without a hearing. The defendant asks us to dismiss the petition as time-barred.
Under Friedman v. United States, 159 Ct. Cl. 1, 310 F. 2d 381 (1962), cert. denied, 373 U.S. 932 (1963), and Harper v. United States, 159 Ct. Cl. 135, 310 F. 2d 405 (1962) — applying earlier rulings of this court[1] — the judicial cause of action for disability retirement pay does not accrue until final action by the first competent board to decide (or to be asked to decide) whether the officer was entitled to such pay. We also held, accordingly, that if the first competent board is the Correction Board, then the judicial claim does not mature until that Board’s final determination (as approved by the Secretary) and the limitations period does not begin to run until that time. We recognized explicitly in Friedman (p. 34, 310 F. 2d at 401) that a “lengthy time can elapse where the Correction Board is the first Board to act,” but we pointed out that:
The answer is that Congress has deliberately given servicemen this lengthy period in which to apply to the Correction Board although no Retiring Board has been called or asked; in effect, Congress has allowed many servicemen a very long time in which to seek retirement pay and has not insisted that application be made at *90 or upon release from service. We do not depart from our prior decisions embodying the principle that the claim for disability retirement pay does not accrue until the final action of a proper board simply because we may possibly believe too long a time has elapsed or been allowed. * * *
It would follow, in plaintiff’s case, that his claim for disability retirement did not accrue until the Correction Board acted in January 1962 — unless that Board was not the first competent board to act (or to be asked to act) on his claim.
There was, as we have said, never any Retiring Board or a request for one. Plaintiff did not seek to (and probably could not) go to the Disability Review Board. Those are the other boards which have been considered appropriate to pass upon a claim for disability retirement. Defendant says, however, that plaintiff did appear before a Medical Survey Board in April 1945 (which acted finally) ,[2] and that that Board was a proper and competent tribunal whose action ripened the claim for judicial cognizance. In our view, this position cannot be reconciled with the Friedman opinion, which announced “the rules we shall now follow” (p. 6, 310 F. 2d at 384) ; nor can it be reconciled with the status and purpose of the Medical Survey Board in the Navy.[3] The Medical Survey Board does not have the standing — with respect to the accrual of a claim for disability retirement pay — of the Retiring Board, the Disability Review Board, or the Correction Board.
Friedman declares that the judicial claim develops upon final action “of a board competent to pass upon eligibility for disability retirement (or upon refusal of a request for such a board)” (p. 24, 310 F. 2d at 395-96; emphasis added). Elsewhere the opinion speaks, in more general terms, of a “competent” or “proper” or “statutory” board. For instance, the court says :
The rationale of all the cases, taken together, is that Congress has given the function of deciding entitlement *91 to disability retirement to the Secretary, acting with or through a statutory board, and that the claim does not accrue until final action on the basis of the determination of the first competent board to decide. [P. 18, 310 F. 2d at 392; emphasis added.]
In this connection, the court was undoubtedly thinking of the Retiring Board as the initial such board — not the Medical Survey or Disposition Board. The entire opinion is permeated by repeated references to the Retiring Board as the basic tribunal qualified to pass upon eligibility for disability retirement. That is one of the major postulates of .the decision. The broader terms “proper,” “competent,” or “statutory” were included to cover the Disability Review Board and the Correction Board, which as the opinion points out also have the power to pass upon eligibility for disability retirement. No other board is placed in that category.[4] The reason why a Medical Survey Board is not included is that it is not competent to pass upon eligibility; it does not act for the Secretary; and it is not a statutory board — consequently, it is not a “proper” board for these purposes.
A comparison of the Retiring Board and the Medical Survey Board will explain the significant differences. For the World War II period with which we are concerned, the Retiring Board was established by Congress to pass upon the precise issues of whether a reserve officer should be retired for physical disability and become eligible for disability retirement pay. See Lemly v. United States, 109 Ct. Cl. 760, 75 F. Supp. 248 (1948) (Navy) ; Spencer v. United States, 121 Ct. Cl. 558, 102 F. Supp. 774 (1952), cert. denied, 344 U.S. 828 (Army). That Board was competent to decide those questions because the statutes, as implemented by valid regulations, specifically empowered it to do so. That was its express function. The Medical Survey Board, on the other hand, was not a creature of Congress but of the Navy Department. *92 It was concerned with the health status of servicemen hospitalized, injured, or incapacitated for appreciable periods. It was a general board whose function was not to decide eligibility for retirement but to evaluate the man’s health and prognosis for various purposes, e.g., whether he was still incapacitated; whether he should continue in the hospital or be returned for full or limited duty; whether the incapacity or disease was due to his own misconduct; whether it was incurred in line of duty. One of its several functions, but only one, was to screen cases to see whether they should 'be channeled to a Retiring Board; it had no power itself to decide that retirement should be allowed. In short, unlike the Retiring Board, the Medical Survey Board was not a statutory entity and was not itself competent to determine finally a serviceman’s claim for retirement if he should happen to make one before it.
Moreover, the Medical Survey Board, unlike the Retiring Board, does not meet the requirement that the “proper” board must be one acting for the Secretary. This court has repeatedly said: “All of these boards, the Retiring Board, the Disability Review Board, and the Board for Correction of Military Records- act only in an advisory capacity to the Secretary of War [or the Secretaries of the other services].” Girault v. United States, 133 Ct. Cl. 135, 144, 135 F. Supp. 521, 526 (1955). See Lipp v. United States, 157 Ct. Cl. 197, 201, 301 F. 2d 674, 676 (1962), cert. denied, 373 U.S. 932 (1963); Friedman v. United States, supra, pp. 18-19, 310 F. 2d at 392. See also Furlong v. United States, 138 Ct. Cl. 843, 845-46, 152 F. Supp. 238, 240-41 (1957) (“jurisdiction is conferred by Congress, not on this court, but on retiring-boards and the Secretaries of the three armed services, to decide an officer’s right to retirement for physical disability * * *”). The Medical Survey Board, however, is not an arm of the Secretary; it is convened by the commanding officer of a post or station and its actions are passed upon by him, not by the Secretary. The commanding officer is interested in the immediate disposition of a man within his command who has been hospitalized, injured, or incapaci *93 tated. He is not directly concerned with, the Secretarial issue of retirement for physical disability.[5]
Still other important reasons why the Medical Survey Board, as distinguished from a Retiring Board, it not a “proper” board are supplied by their contrasting procedures and composition. For many years Congress required that a naval officer about to be retired from active service should have “a full and fair hearing” before a Betiring Board “if he shall demand it.” See Lemly v. United States, supra, 109 Ct. Cl. at 763-64, 75 F. Supp. at 250. Cf. 10 U.S.C. § 1211. This meant a formal proceeding before the Betiring Board, with the officer notified and aware of the proceeding and able to participate (through counsel, if he desired). Similarly, the Disability Beview and Correction Boards have formal proceedings, so that the applicant can present his case. In all such proceedings, the serviceman knows that the board is considering the issue of his disability retirement; he can offer evidence and arguments; and he can see all the prior medical records. The issue of disability retirement is not tried or decided behind his back. In contrast, the procedures of a Board of Medical Survey (as we understand them) may be so informal and amorphous that the individual can he unaware that a board has met to consider his case or that the matter of retirement is at all at issue.[6] This is not the “full and fair hearing” Congress demanded. In addition, it is not clear that the serviceman is shown a copy of the Board’s report. And in any event, that report is often summary and, *94 as in the present case, may make no reference to retirement (see footnote 2, supra). Since the Medical Survey (or Disposition) Board consists only of medical officers, it is not improbable that a serviceman would think that they are simply evaluating the current status of his health (perhaps to help with his treatment). The statutory boards, including the Retiring Board, all have non-medical members — presumably because it is believed that retirement for physical disability is not solely a medical matter to be decided by doctors alone.
In response to all this, defendant puts heavy stress on a 1945 amendment to the legislation authorizing the Disability Review Boards to scan decisions and findings of Medical Survey and Disposition Boards, as well as of Retiring Boards. Section 4, Act of December 28, 1945, 59 Stat. 623, now 10 U.S.C. § 1554. This amendment, however, did not establish or recognize the former as “statutory” units “competent” to decide disability issues. The legislative history shows that there were many officers who had been separated for physical disability, but without retirement pay, without having had a Retiring Board (perhaps wrongfully in some instances). The original legislation creating the Review Boards limited their jurisdiction to decisions of Retiring Boards separating a man on physical grounds, but without pay. It was considered unfair to deprive officers who had not had Retiring Boards (even though they may have requested them) of the same kind of review within the service itself. See S. Rep. No. 698, 79th Cong., 1st Sess., p. 2; H.R. Rep. No. 1449, 79th Cong., 1st Sess., p. 13; 79th Cong. Rec. 12373; Hearings on H.R. 3749, Senate Committee on Finance, 79th Cong., pp. 246-47. This beneficent modification to permit an administrative remedy cannot be read as a sub silentio change in the status or functions of the Medical Survey and Disposition Boards.
Defendant also relies, incorrectly, on our holding in the case of Wilson v. United States (reported with Aflague v. United States, 159 Ct. Cl. 80, 90-92, 309 F. 2d 753, 758-59 (1962)) that, for the narrow purposes of the retroactive aspects of Section 411 of the Career Compansation Act of 1949, 63 Stat. 802, 823-24, a prior finding by a Medical Survey *95 Board should be accepted as showing that a Naval enlisted man had been “heretofore retired by reason of physical disability.” That ruling did not equate Medical Survey Board proceedings with Retiring Board proceedings for all purposes, 'but only for one limited end in very special circumstances. The crux of the decision was that, although Congress had clearly made Section 411 retroactive so as to cover members of the Fleet Reserve previously retired for physical disability, it would be impossible to implement that provision if proof of a Retiring Board were demanded since Retiring Boards were not made available to enlisted men like Wilson at the time he was retired. It was only in the circumscribed context of the retroactive features of Section 411 that the court held a finding by a Medical Survey Board to be operative. That decision does not affect cases where a Retiring Board is considerer available, as for an officer like plaintiff.
The defendant urges, finally, that plaintiff’s claim was ripened by his Medical Survey Board proceeding because, under Navy regulations, such a Board is a necessary prerequisite to an appearance before a Retiring Board and an officer could not reach the latter unless the former so recommended. The requirement, however, is for appearance before (or request for) a “competent” board, not some prerequisite to that “competent” board. There is no more reason why the claim should accrue upon a finding by a Medical Survey Board, simply because it may be a prerequisite to a Retiring Board, than that it should ripen upon examination by a single doctor or group of doctors — e.g., at a terminal physical examination — -which is the normal precondition to appearance before a Medical Survey Board. Plaintiff did not appear before a Retiring Board or ask for one at any time. If he had asked the Medical Survey Board to allow him to proceed to the Retiring Board and the Survey Board had refused, the case would be very different. He would then have sought a Retiring Board and his claim would have accrued when such an appearance was denied him.
We conclude, therefore, that plaintiff’s Survey Board proceeding did not accrue his cause of action in this court and that the claim did not mature until the final decision of the *96 Correction Board in January 1962. His petition, filed less than a month later, was timely.
Although we have warned that our rulings in these limitations cases will not turn on the special and varying facts of each particular case (Friedman, v. United States, supra, pp. 35-36, 310 F. 2d at 402), and our holding here does not turn on plaintiff’s special facts, it is not amiss to point out that plaintiff’s case, on his allegations, falls well within the general class we thought (in Friedman, pp. 34-35, 310 F. 2d at 402) would comprise many or most of the instances in which the officer did not have or seek a Retiring Board but instead presented his first application, perhaps years later, to the Correction Board, i.e., men who did not know they were ill or did not appreciate the progressive or serious character of their disease when they were released. The petition alleges that, although plaintiff has been seriously disturbed since 1944, “it was part of plaintiff’s mental illness to be unable to acknowledge his condition.” “At first, he and his family felt that, in time, he would recover from the shattering effect of his war experiences. Then, as time did not repair the damage, fear of embarrassment prevented him and them from revealing his condition to the outside world. ” “At length, in desperate need of help, plaintiff, in 1957, applied to the Veterans Administration * * Then, ultimately, he came to the Correction Board.[7]
Defendant’s motion to dismiss the petition is denied. The case is returned to the Trial Commissioner for further proceedings.

 Particularly Proper v. United States, 139 Ct. Cl. 511, 154 F. Supp. 317 (1957), and Patterson v. United States, 141 Ct. Cl. 435 (1958).

 The report of tills Board, after summarizing plaintiff’s combat experience and illness, concluded that “this patient has recovered from his illness and is physically and mentally fit for full duty.” The recommendation was that he be assigned to full duty. He was so assigned. See footnote 5, infra¡

 The Disposition Board was the Army equivalent.

 The only reference to a Disposition or Medical Survey Board is a footnote (p. 14 n. 9, 810 F. 2d at 389-390 n. 9) construing two earlier court rulings as concluding tliat the findings of a Disposition Board plus extensive medical examination and other consequent proceedings in those particular cases were “the equivalent of a Retiring Board proceeding.”

 In plaintiff’s ease, the report of the Board of Medical Survey is dated April 26, 1945, but he was not finally released from active service until November 25, 1945. (He apparently had his terminal physical examination on September 25, 1945.) His petition says that between his release from the hospital where the Survey Board met and his release from active service he served on a naval repair ship. Thus, the Survey Board on which defendant stands examined plaintiff some five months before he went on terminal leave. In the interim he had additional service.

 In Gordon V. United States, 162 Ct. Cl. 740 (1963), on other grounds, plaintiff Gordon testified that when he was being examined by the doctors of the Disposition Board he thought (and was not informed to the contrary) that he was merely undergoing another routine medical consultation ; there was no formal procedure, no statement of what the Board was to consider and no advice to him that it was incumbent upon him or advisable for him to make or present a claim for disability retirement. In another case, still pending, we are told in a brief that the plaintiff did not appear before the Disposition Board even as a patient and that there is no evidence that he knew the findings.

 We also repeat our notation in Friedman, p. 34, 310 F. 2d at 401, that “in cases in which the lapse of time puts the Government at too great a disadvantage in its proof before a Correction Board (or in this Court) a rejection of the claim by the Board may well not be arbitrary in view of the difficulties of proof due to the passage of the years.”