**William Ray HUFFAKER**

v.

**The UNITED STATES.**

No. 93–82C.

United States Claims Court.

June 9, 1983.

13. Note 12, *supra.*

14. 1974–1 C.B. at 246.

John W. Gibson, Pittsburgh, Pa., for plaintiff.

Glenn E. Harris, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

COLAIANNI, Judge.

This case, which involves a claim for disability retirement pay under 10 U.S.C. § 1201, comes before the court by way of cross-motion for summary judgment. Plaintiff claims to have sustained wounds that entitle him to disability pay. Defendant argues that any such claims, even assuming they are meritorious, are barred by the statute of limitations or the doctrine of laches.

Upon review of the motions presented, along with the accompanying documentation, it is concluded that no genuine issue of material facts exists and that plaintiff's claim is barred by either the statute of limitations or laches. Therefore, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

*Facts*

Plaintiff in this case is a veteran of the United States Marine Corps, whose active duty from September 1966 to August 1968 included service in Vietnam. On May 5, 1968, while in Vietnam, plaintiff was wounded in combat, and as a result spent approximately two months, until July 2, in a hospital. After his recuperation, plaintiff was released from the Marine Corps with an honorable discharge. His discharge, on August 30, 1968, was not the result of a disability. No physical evaluation board was convened while plaintiff was on active duty with the Marines, and he thus did not receive disability retirement pay after his release.

In 1974, plaintiff applied for veterans benefits, and at that time was examined by Veterans Administration physicians. He was initially given a 10% disability rating, but on appeal this was amended to a 60% disability rating based on the injuries he

received while in service. In 1981, plaintiff petitioned the Board for the Correction of Naval Records (BCNR) with a disability claim based on the same injuries. This claim was rejected on March 16, 1982. Plaintiff filed a petition in this court on February 22, 1982, claiming disability retirement pay retroactive to his release from active duty, pursuant to 10 U.S.C. § 1201, based on the 1968 injuries.[1]

Concurrent with his discharge, plaintiff was examined by Navy physicians and found to be fit for duty. The physicians' conclusions were certified in a "Report of Medical Examination," dated August 26, 1968. In addition to the usual medical information, Box 73 of the report contained the following signed certification by plaintiff: "I certify that I have been informed of and understand the provisions of BUMED INSTRUCTION 6120.6."

BUMEDINST 6120.6C provided for the implementation of a policy of the Secretary of the Navy "that all personnel of the naval service be made aware of the possibility of being denied any benefits provided by reference (a) [Chapter 61, U.S.Code, Title 10] by reason of not rebutting, under certain circumstances, a finding that they are fit for duty." The background for the instruction is also set forth. It points out that for a member to be eligible for benefits the Secretary must determine, while the person is entitled to receive basic pay, that he or she is unfit to perform his or her duties due to the physical disability. Since basic pay is not received after discharge or release, the member must qualify for the benefits provided before being discharged or released from active duty. Thus, the instruction sets up a procedure whereby the member may not only rebut the finding of fitness, but allege unfitness, and present evidence to support the claim. If the evidence is considered reasonable, the member is referred to a hospital for study and, if additional study warrants, is granted an appearance before a medical board. That board's report is then forwarded to the Chief of

Naval Personnel through the Chief of the Bureau of Medicine and Surgery, and a final disposition of the case is made.

If, at the time of the discharge physical, a member is found to be physically fit for release from active duty, as was the case with plaintiff, he or she is to be told by the medical officer who conducted the physical of the results of the examination, the unavailability of benefits after release, and the right to contest the results at that time. The member is required to certify that he or she has been informed of and understands the provisions of the instruction, which are presented in accordance with the following sample statement:

> You have been examined and found to be physically fit for separation from active duty. If you feel you have a serious defect or condition that is unfitting, tell the doctor who examined you. The doctor will evaluate your defect or condition and, if necessary, refer you to a hospital for further study and, if warranted by the further study, appearance before a medical board.
>
> To receive a disability pension from the Navy, you must be found unfit to perform your duties before you are separated. After you are separated, any claims for disability benefits must be submitted to the Veterans Administration.
>
> Please sign the statement on the back of the SF 88 (Report of Medical Examination) to show that you understand the foregoing.

BUMEDINST 6120.6C—2 October 1967.

Plaintiff not only certified to having been told of the above instruction, he, in addition, raised no objections to the finding that he was fit for duty at the time of his discharge in 1968. Consequently, no further evaluation of his condition was conducted by the service.

### Discussion

Defendant maintains that the plaintiff's claim is barred by the statute of limitations

---

1. In the alternative, plaintiff asked that the disability retirement pay be extended retroactively back for six years preceding the date of his petition.

and additionally that it should be denied because of laches. The government, more particularly, asserts that plaintiff's cause of action, if any, accrued with the finding on August 26, 1968, by the medical discharge board, that the plaintiff was fit for duty and subject to an honorable discharge rather than disability retirement. Since suit was not commenced in this court within six years of plaintiff's release, defendant argues that recovery is barred. Even if the date of accrual of the cause of action is found not to be the date of discharge, defendant argues that all elements necessary for invoking the doctrine of laches, that is, plaintiff's inexcusable delay as well as prejudice to the defendant, are present in this case to deny plaintiff the relief sought.

Plaintiff, relying on *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963), states that his claim for disability retirement pay did not accrue until the final action of the first competent board to pass upon his eligibility for disability retirement. The denial on March 16, 1982, of his application for correction of his military records, was the event which according to plaintiff gave rise to his cause of action, and that his suit in this court is thus timely. Plaintiff further maintains that defendant cannot raise the defense of laches inasmuch as it allegedly contributed to the delay in the filing of the claim, and also that the defense is inapplicable because of the absence of prejudice to the defendant resulting from the delay.

The court believes in this case, since the plaintiff was given the opportunity to tell the examining physician during his discharge physical of any serious defect or condition under the provisions of BUMEDINST 6120.6C, and he chose not to do so, that the limitations period began running as of the date of his discharge. In any event, the court finds that, given the fourteen-year span between the discharge and the bringing of the suit, that plaintiff's claim is barred by the doctrine of laches.

The statute of limitations applicable to this court provides that "[e]very claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Thus, if the cause of action accrued in this case upon discharge in 1968, then some fourteen years expired before the filing of this case, and it is consequently barred. It accordingly becomes imperative to determine when the cause of action accrued in this case.

■ It has long been established that the cause of action in a disability pay case arises when a proper board has acted or declined to act in a particular case. *Friedman v. United States,* 159 Ct.Cl. at 13, 310 F.2d at 389. Release from active duty without appearing before a physical evaluation board, or without requesting a board hearing has not been found, without more, to be enough to start the limitations period. *Id.* at 14, 310 F.2d at 390. Where no retirement board is constituted before a serviceman's release and a correction board is the first board to consider his eligibility, the final decision of the correction board serves as the point at which the cause of action accrues. *Id.* at 25, 310 F.2d at 396.

■ A physical evaluation board hearing was not instituted by the Navy in this case because it found plaintiff fit for duty. The Navy, in effect, concluded that no further evaluation of the plaintiff was warranted. Plaintiff, on the other hand, also made no request for a board, notwithstanding the fact that he certified, incident to his discharge physical, that he was aware of the Navy's estimation of his condition, and of his right to request further review of his condition if he disagreed with that conclusion. Plaintiff's failure to act in response to the Navy's conditioning further medical evaluation upon plaintiff's objections, and assertion that absent an objection plaintiff would receive no further consideration, amounted to a waiver by plaintiff. In turn, the waiver of any further action triggered the running of the limitations period.

The conclusion that plaintiff's certification to being told and understanding the provisions of BUMED Instruction 6120.6 amounts to a waiver of his rights to a

physical evaluation board and triggers the running of the statute of limitations is consistent with and suggested by *Duvall v. United States,* 227 Ct.Cl. 642 (1981). The facts in *Duvall* necessary to a showing of its applicability to the case at bar will be briefly reviewed. The plaintiff in that case had, within months of his enlistment, complained of headaches and hearing loud noises. He was hospitalized and underwent neuropsychiatric evaluation. Private Duvall was diagnosed as being "clearly oriented," but having incipient schizophrenic psychosis, and was returned to his unit. When his attitude and performance failed to improve, his captain recommended his separation from the Army. This was followed with Pvt. Duvall's written request for discharge "for the convenience of the Government for physical disability." The request acknowledged that he was unfit for service because of a "physical disability" existing before his entry into the Army and that it had not been aggravated by his military service. Private Duvall also certified that he had been told that he was entitled to consideration by a physical evaluation board and elected not to exercise that right. In his written statement, Pvt. Duvall stated: "I understand that such separation will be without disability retirement or disability severance pay, however, it does not preclude my applying for benefits administered by the Veterans Administration."

Private Duvall was honorably discharged from the Army on October 28, 1955. In 1958 he made application for VA benefits, but his application was denied.

On April 11, 1970, Pvt. Duvall petitioned the Army Board for Correction of Military Records (ABCMR) for the correction of his records and for a fifteen-percent disability rating. The petitions were rejected on August 19, 1970. Finally, on May 30, 1980, plaintiff filed his action in this court.

In the course of concluding that Pvt. Duvall's action was barred by the statute of limitations, the court's consideration and discussion of the effect of his statement that he understood his separation from the Army was to be "without disability retirement or disability severance pay * * *," is helpful in a resolution of the case at bar. The *Duvall* case recognized that a person claiming a service-related disability is entitled to a "retiring board to determine whether he is in fact disabled and if so to what extent * * *." *Id.* at 645. The case also recognized that the statute of limitations does not begin to run until there has been consideration by a board which is competent to either grant or deny the relief requested. *Id.* However, in *Duvall,* since the events which occurred at the time of the decision by the ABCMR were beyond dispute, and since suit was not filed in our predecessor court until almost ten years after the ABCMR's denial in 1970, the court decided that plaintiff's suit was barred by the statute of limitations. *Id.* at 648.

Notwithstanding the conclusion reached, that court, it can be fairly stated, felt that a similar result could have been reached had it chosen to concentrate on events surrounding plaintiff's waiver of a retirement board in 1955. This becomes evident from the following statement:

> The facts here demonstrate that plaintiff was offered a hearing before a retiring board but rejected it. If we ignore this fact and ignore that he was certified as competent to know what he wanted and what he was doing at the time, and if we give full credence to plaintiff's claim in his affidavit that he did not knowingly waive his rights and was not advised of them, then we come to the proposition that the limitations did not start to run until a competent board did consider his case, *namely,* the ABCMR on August 28, 1970. *Friedman v. United States, supra; Harper v. United States,* 159 Ct.Cl. 135, 310 F.2d 405 (1962). Otherwise, the appeal to the ABCMR would not have been tolled, and the cause of action would have accrued in 1955 instead of in 1970. *Bruno v. United States,* 214 Ct.Cl. 383, 556 F.2d 1104 (1977); *Eurell v. United States,* 215 Ct.Cl. 273, 566 F.2d 1146 (1977). Since, however, the board's decision was over 10 years ago, plaintiff again is defeated by the 6-year statute of limitations unless he

can meet his burden to show that the board's decision was unlawful or that again limitations were tolled in some manner.

227 Ct.Cl. at 645–46.

That the court concentrated on the "easier" facts in *Duvall* is also clear from the following statement:

We have extended this discussion only because plaintiff initially proceeded *pro se,* and we are sensitive to the possibility in such instances that some procedure or right might have been violated without being adequately advanced. Plaintiff is, however, presently represented by able counsel, who has not put forward the best possible case for plaintiff, but the facts cannot be overcome by plaintiff's making an affidavit, over 25 years after the basic event, denying all of his earlier admissions. Construing limitations in the light most favorable to plaintiff and giving him the benefit of any doubt that the statute started to run before his 1970 application to the ABCMR, he still cannot prevail because he is out of time. We do not find it necessary to reach the other issues raised by the parties.

*Id.* at 648.

In the instant case, plaintiff was given a discharge physical on August 26, 1968, and was found to be qualified for return to active duty to perform all duties called for by his rank. This amounted to a clear declaration by the Navy that plaintiff was not entitled to disability retirement pay. Indeed, the events surrounding plaintiff's physical hardly permit a comparison to the rationale of *Hoppock v. United States,* 163 Ct.Cl. 87 (1963), where a medical survey board was found to be no substitute for a retiring board, to urge that his acts fall short of a waiver. The logic behind the *Hoppock* finding held that—

[s]ince the Medical Survey (or Disposition) Board consists only of medical officers, it is not improbable that a serviceman would think that they are simply evaluating the current status of his health (perhaps to help with his treatment).

*Id.* at 94.

It is unlikely that Huffaker could similarly fail to appreciate the purpose of the procedures surrounding the discharge physical in this case. Here it was clear that the procedure established by the Secretary was for the purpose of identifying before discharge any objections the member might have with the evaluation of his condition by the service. It is also clear that plaintiff was in fact affirmatively alerted to the fact that he might indeed have a claim notwithstanding the doctor's findings and that he should pursue this before he was discharged or jeopardize any potential benefits he might obtain. That plaintiff was aware of his rights cannot be gainsaid, because BU-MEDINST 6120.6C required his certification that he was aware of the significance of the procedure, and he so certified. Plaintiff now asks the court to ignore that certification on the strength of the assertion that "other than signing a short paragraph stating that he had read an administrative instruction, there was no indication that * * * [he] was aware of the possibility of receiving disability retired pay for his injuries." (Plaintiff's cross-motion for summary judgment, at 6.) In the absence of a showing that the Navy misrepresented the extent of his medical unfitness or that plaintiff and defendant were both totally unaware of the true extent of plaintiff's injuries, I find that plaintiff's failure in the face of the Navy's conclusion of fitness to inform the examining physicians of any unfitting condition amounts to a waiver of his right he had to appear before a medical board.

Plaintiff has introduced no evidence in the case to show that his decision to not ask for a medical retirement board was not willingly made. Nor has plaintiff shown that his declination was based on wrong information or that he was misled in any manner.

Plaintiff thus appears to have made an effective waiver of his right to a retirement board such that the cause of action must be

concluded to have accrued on August 30, 1968, unless anything occurred to toll its start.

This case is not, as plaintiff suggests, similar to *Harper v. United States,* 159 Ct.Cl. 135, 310 F.2d 405 (1962), where plaintiff's action was not barred although brought after six years even though he declined a retiring board prior to release. There the statute of limitations period was tolled because neither the plaintiff nor the doctors knew of a possible disability prior to discharge due to the nature of the disability itself, in this case a herniated disc. The court in *Harper* left open the question of whether plaintiff would have been precluded from recovery had he known at the time he declined the retiring board, or by ordinary diligence could have learned of the serious nature of his ailment. *Id.* at 139, 310 F.2d at 407. *See also Proper v. United States,* 139 Ct.Cl. 511, 154 F.Supp. 317 (1957) (multiple sclerosis); *San Millan v. United States,* 139 Ct.Cl. 485, 153 F.Supp. 370 (1957) (cancer); *Patterson v. United States,* 141 Ct.Cl. 435 (1958) (multiple sclerosis). Plaintiff's injuries were missile wounds received in combat which he admits were static in nature and have not worsened in the intervening years. Thus, plaintiff has pointed to nothing to effectively toll the start of the statute of limitations in August of 1968.

Even if I were to ignore all of the above facts and conclude that the cause of action did not accrue until the action of the corrections board in 1982, the doctrine of laches would require the dismissal of plaintiff's action. Laches has been characterized as—

a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury or prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of socie-

ty, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth. As an equitable defense, laches is applied apart from, and irrespective of, statutes of limitations.

*Brundage v. United States,* 205 Ct.Cl. 502, 505–06, 504 F.2d 1382, 1384 (1974).

Plaintiff maintains that it was not until the fall of 1980, upon review of his service medical records, that he learned that he had been found at the time of his release from the hospital to have fully recovered with no disability attributable to his combat wounds. It was then that he filed his complaint with the BCNR and, upon learning that the Central Physical Evaluation Board had recommended a denial of his request to the BCNR, promptly filed his complaint with the Claims Court.[2]

Plaintiff would deny the defense of laches to defendant on the grounds that defendant contributed to the delay in plaintiff's contesting the finding of fitness and thus has unclean hands. Plaintiff suggests that the doctors who examined him had superior knowledge of his condition in 1968, but failed to convey it to him. He also claims that defendant had the power to order a retiring board for plaintiff to preclude a possible stale claim later on.

Plaintiff also claims that the other element necessary for laches to apply, prejudice to the defendant, is "not that serious" in this case, even if the physicians who examined plaintiff and other witnesses might no longer be available. He states that the administrative records documenting the injury are available and, since the injury is a static one, should suffice as evidence of plaintiff's claim that the doctor's decision in 1968 that he was fit for duty was erroneous.

I do not agree with plaintiff's assessment that the delay in filing an action in this court was excusable either because defendant allegedly contributed to the delay or because there is no prejudice to defendant.

---

**2.** Plaintiff actually filed his suit several weeks prior to the BCNR's denial of his application for correction of his records. The early filing

was based on the recommended denial of the request by the Central Physical Evaluation Board.

The first element needed for laches to apply, the element of inexcusable delay, is clearly present. Plaintiff was alerted to the adverse position of the military service regarding his disability at the time of his release from service in 1968. They found him fit for duty despite his gunshot wounds and alerted him to this fact as well as his right to rebut their findings before discharge or risk losing disability payments. Even if he did not for whatever reason appreciate the significance of this adverse finding at that time, the finding of the VA six years later that he was 60% disabled under their rating of his condition clearly brought to his attention at the very least that a discrepancy existed in the two medical evaluations. This is so notwithstanding the fact that VA benefits are arrived at using different guidelines than those used by the armed services to determine disability. Despite plaintiff's claims to the contrary, at the time of the VA award, if not at the time of his discharge, he had all the information he needed to file a suit for retirement disability pay.

It is worth emphasizing that some seven years passed between the time of the VA award and his application before a corrections board, and it was over fourteen years between his actual discharge in 1968 and the filing of plaintiff's complaint in 1982. Although this suit was filed contemporaneous with the decision of the corrections board, which, construing the facts in the light most favorable to plaintiff would mark the start of the statute of limitations, it was brought long past the time when diligence dictated that an action be brought. The court made this quite clear in *Adkins v. United States,* 228 Ct.Cl. 909 (1981), when it pronounced:

> Where on notice of his claim and where plaintiff could have but failed to bring suit, he may be charged with periods of inexcusable delay even though such periods occurred prior to the accrual of the claim for limitations purposes.

*Id.* at 911.

Further, there is considerable prejudice confronting defendant in having to defend a suit so long removed from the events giving rise to the cause of action. Although plaintiff suggests that the medical records may speak for themselves since his injuries were static, there clearly exists a challenge to the initial assessment of fitness for duty by the armed service prior to discharge which would in all fairness require the testimony of the examining physicians. The fact that these events took place some fourteen years before the filing of a suit suggests that there may be problems locating the necessary witnesses and relying on their memories of plaintiff's condition in defense of their decision at that time. As the court noted in *Quirk v. United States,* 227 Ct.Cl. 780, 782–83 (1981), "as the plaintiff's delay in filing a suit increases, the less need there is to find specific prejudice and the greater the shift to plaintiff to show lack of prejudice." *Id.* at 782–83. It further observed that "[d]efendant alleges, and we think it likely, that the examining doctors cannot be located or, if found, can hardly be expected to recall observations made at least a decade ago. The administrative record is hardly an adequate substitute." *Id.* at 783.

The court in *Adkins* agreed and pointed out that "the cases are legion in this court that, where the delay in asserting a claim is too long, the burden of showing there was no prejudice shifts to plaintiff and prejudice may be presumed if the burden is not discharged." 228 Ct.Cl. at 912.

I also think that plaintiff argues inconsistently when he alleges that he learned only in 1980 of the seriousness of his disabilities for the purpose of showing excusable delay, and at the same time argues that his injuries were static for the purpose of showing no prejudice to defendant.

Plaintiff's condition did not worsen; rather, two differing conclusions were reached as to his disability and fitness for duty based on the identical symptoms, the VA finding a 60% disability rating on appeal. This may or may not have indicated error on the part of the initial Navy physi-

cians at the time of plaintiff's discharge. It was pointed out by the president of the Central Physical Evaluation Board in a memorandum to the chairman of the BCNR in 1982:

> The mere presence of a condition ratable under provisions of the Veterans Administration Schedule for Rating Disabilities is not per se evidence of unfitness for military duty. Only conditions which actually render a member unfit for such duty may be considered * * *. Nevertheless, any worsening of a ratable condition present at the time of active duty termination may entitle the member to benefits administered by the Veterans Administration under guidelines different from those used by the military service.

Our predecessor court has also observed that "[t]he search for truth is always imperiled with the passage of time." *Brundage v. United States,* at 510, 504 F.2d at 1387.

A challenge to the finding upon discharge that plaintiff had no disability referable to his combat wounds after fourteen years carries with it a burden of showing no prejudice to defendant which plaintiff has not overcome. For this reason, I conclude that plaintiff's claim is also barred by laches.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, plaintiff's cross-motion is dismissed, and plaintiff's petition is also dismissed.

IT IS SO ORDERED.