# United States Court of Appeals for the Federal Circuit

04-5134

JAMES S. CHAMBERS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Thomas J. Reed, Widener University School of Law, of Wilmington, Delaware, argued for plaintiff-appellant.

Gregory T. Jaeger, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Lawrence J. Block

# United States Court of Appeals for the Federal Circuit

04-5134

JAMES S. CHAMBERS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  August 1, 2005
_____

Before MICHEL, <u>Chief Judge</u>, MAYER and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Chief Judge</u> MICHEL.  Dissenting opinion filed by <u>Circuit Judge</u> DYK.

MICHEL, <u>Chief Judge</u>.

James S. Chambers ("Chambers") appeals the decision of the United States Court of Federal Claims granting judgment upon the administrative record in favor of the United States ("the government").  <u>Chambers v. United States</u>, No. 03-1767-C (Fed. Cl. July 12, 2004).  The trial court upheld the decision of the Army Board for Correction of Military Records ("ABCMR" or "Board") denying Chambers' request to reopen his 1970 honorable discharge from the military to assess whether he suffered from post traumatic stress disorder ("PTSD") while on active duty such that he should have been retired for disability under 10 U.S.C. § 1201 with disability retirement or severance pay.

Although neither the parties nor the trial court considered whether the Court of Federal Claims had jurisdiction to hear Chambers' case, "[e]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (citation omitted). Given some thirty-three years separating Chambers' discharge from the Army and his suit in the Court of Federal Claims, we requested jurisdictional briefing from the parties. We now hold that because the ABCMR was the first competent military board to consider Chambers' disability retirement claim arising under 10 U.S.C. § 1201, his claim did not accrue until the Board rendered its final decision in September 2000. Chambers' 2003 suit in the Court of Federal Claims was, therefore, not barred by the six-year statute of limitations in 28 U.S.C. § 2501. However, because the Court of Federal Claims correctly held that the decision of the ABCMR was supported by substantial evidence, we affirm.

**BACKGROUND**

I.

Chambers enlisted in the U.S. Army in July 1967. After completing training in Fort Bliss, Texas, Chambers served in the Panama Canal Zone until he was reassigned to Vietnam as a light air defense artillery crewman in December 1969. He was promoted to the rank of sergeant (grade E-5) in March 1970.

Prior to his discharge from active duty in July 1970, Chambers was hospitalized three times. In June 1968, Chambers was hospitalized for back pain resulting from a car accident. At that time, he was also diagnosed with "transient stress reaction." The

attending psychiatrist, however, concluded that no follow-up treatment was necessary. In January 1969, Chambers was readmitted to the hospital for headaches and chest pain, diagnosed with "personality pattern disturbance, transient, situational," and prescribed Valium. He returned to regular duty after eleven days in the hospital. In April 1970, approximately three months before Chambers' discharge, Chambers reported to a military hospital complaining of an earache and nervousness. Upon referral to the Neurological Psychiatric Clinic, Chambers reported feeling agitated, short-tempered, and experiencing difficulty interacting with his fellow soldiers and superiors. Chambers was diagnosed with "mild situational anxiety" and prescribed Librium. He returned to regular duty the same day.

Chambers returned to Fort Lewis, Washington in July 1970 to complete his military obligation. At Fort Lewis, Chambers' medical records were examined, and he received a separation physical exam, which revealed no physical or psychological abnormalities. Chambers was found medically qualified for separation and honorably discharged.

After separation from active duty, Chambers first sought medical assistance from the Veterans Administration ("VA") in November 1972. At that time, he was diagnosed with acute bronchitis, but made no mention of PTSD-related symptoms. From 1982 to 1983, Chambers served in the New York Army National Guard.

Chambers was diagnosed with PTSD in February 1987, while in the Drug Rehabilitation Program at the VA Hospital in Montrose, New York. Chambers promptly filed a claim for VA disability benefits based on PTSD and received a 30 percent PTSD

rating in July 1987.  That rating was ultimately increased to 100 percent, effective June 1990.

## II.

In July 1999, Chambers applied to the ABCMR for disability retirement pay based upon his 1987 diagnosis of PTSD.  Specifically, Chambers asked that the ABCMR reopen his discharge to reassess his mental condition and evaluate his entitlement to disability retirement or severance pay.  Chambers argued that the Army improperly discharged him as physically and mentally qualified, despite his medical history.  He further claimed that the discharge was illegal, because he did not receive counseling about his right to have a Medical Evaluation Board ("MEB") review his fitness for duty or his right to waive MEB review.

The Board denied Chambers' claim on March 16, 2000.  The ABCMR first determined that under Army Regulation ("AR") 635-40 in effect in 1970, only a soldier's commander, physician, or a Military Occupational Specialty/Medical Retention Board ("MMRB") could request MEB review or refer a soldier to an MEB.  Chambers thus had no right to request review by an MEB at the time of his separation.  Accordingly, "[Chambers'] rights were not violated by him not being counseled concerning his right to a[n] MEB or requirement to waive a[n] MEB before he could be separated."

Moreover, the Board determined that the three medical incidents suffered by Chambers — all of them temporary in duration, medically treated, and followed by a return to full military duty — did not meet the requirements for reference to an MEB.  The Board also noted that "[t]he medicines prescribed in these cases, Valium (5 mg

twice a day) and Librium (10 mg three times a day for two weeks), are low concentrations according to the Board's medical doctor advisor."

The ABCMR thus concluded that the physician administering Chambers' physical correctly found no basis for referring Chambers to an MEB based upon his medical condition and medical records. First, the Board observed that Chambers was performing his military duties at the time of separation and was thus presumed fit under the standards set by the U.S. Army Physical Disability Agency. Second, according to the 1970 version of AR40-501, "transient personality disruptions of a nonpsychotic nature and situational maladjustments due to acute or special stress do not render an individual unfit." "As such," the Board ruled, "the doctor was correct in stating that the applicant was qualified for separation."

The Board declined to reconsider Chambers' claim on September 27, 2000.

### III.

On July 24, 2003, Chambers filed a complaint in the Court of Federal Claims, challenging the ABCMR decision as arbitrary and capricious. Chambers claimed, inter alia, he was entitled to a judgment awarding him "disability retirement pay from 22 April 1970 through 1 June 2003 at the rate of 50% of pay for enlisted grade E-5," amounting to $344,000.00 plus costs.

On the parties' cross-motions for judgment upon the administrative record, the trial court ruled in favor of the government. The Court of Federal Claims explained that despite its "arbitrary and capricious" standard of review for administrative decisions affecting military pay, "[e]ssentially, plaintiff asks this court to conduct a de novo review of the administrative record and find that the ABCMR impermissibly denied plaintiff's

claim. This court, however, may not reweigh the evidence but may only ascertain whether the administration's decision was based on substantial evidence." Chambers, No. 03-1767-C, slip op. at 2. The trial court concluded that "[t]he ABCMR reviewed the record and rendered a rational decision that plaintiff was fit for duty at the time of his separation." Id.

Chambers timely appealed to this court. We have jurisdiction over an appeal from a final decision of the Court of Federal Claims pursuant to 28 U.S.C. § 1295 (a)(3).

## DISCUSSION

### I.

We begin with subject matter jurisdiction. There is no dispute that Chambers filed this suit under the Tucker Act, 28 U.S.C. § 1491 (2000), which authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims and waives the government's sovereign immunity for those actions. As we have explained, however, "[t]he Tucker Act does not itself provide the substantive cause of action; instead a plaintiff must look elsewhere for the source of substantive law on which to base a Tucker Act suit against the United States." Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (citations omitted). That source must be "money-mandating." See Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). Here, Chambers claims entitlement to military disability pay under 10 U.S.C. § 1201, a money-mandating statute. See id. at 1174-75. Section 1201 provides that upon the Secretary's determination that a service member is "unfit to perform the duties of the member's office, grade, rank, or rating because of

physical disability incurred while entitled to basic pay," the service member may retire for disability. 10 U.S.C. § 1201(a) (2000).

Claims under the Tucker Act are subject to the six-year statute of limitations in 28 U.S.C. § 2501, which provides that "every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." A Tucker Act claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez, 333 F.3d at 1303 (citation omitted). Accordingly, to ascertain whether the trial court had jurisdiction to hear Chambers' claim, we must determine when that claim accrued — upon his discharge from the Army in 1970, when the ABCMR denied his claim in 2000, or at some point in between those two dates.

This court recently held en banc that a claim for wrongful discharge accrues upon the service member's discharge rather than upon the final decision of the appropriate military corrections board. See Martinez, 333 F.3d 1295. In view of Martinez, we asked that the parties' jurisdictional briefing address whether the same rule applies in retirement disability cases. We now hold that it does not.

In Martinez, the Court of Federal Claims dismissed the plaintiff's claim, filed more than six years after his separation from active duty, as time-barred under 28 U.S.C. § 2501. This court affirmed. We explained that "[i]n a military discharge case, this court and the Court of Claims have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." Id. at 1303 (citing, among other

authorities, <u>Real v. United States</u>, 906 F.2d 1557, 1560 (Fed. Cir. 1990)).  We observed that:

> [t]his court and the Court of Claims have frequently addressed and rejected the argument that the cause of action for unlawful discharge does not accrue until the service member seeks relief from a correction board and the correction board enters a final decision denying relief.  The reasoning underlying that line of cases is that, since their creation, the correction boards have been regarded as a permissive administrative remedy and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge.

<u>Id.</u> at 1304 (citing, among other authorities, <u>Friedman v. United States</u>, 310 F.2d 381, 396 (Ct. Cl. 1962)).  We thus reasoned that Martinez's resort to the ABCMR was permissive rather than mandatory to bringing a Tucker Act suit for monetary relief.  <u>Id.</u> at 1306-08.  Accordingly, we held that Martinez's claim accrued not upon the Board's final decision, but upon his discharge.  <u>Id.</u> at 1310.

Unlike claims for unlawful discharge, however, claims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it.  <u>See</u> <u>Real</u>, 906 F.2d at 1560 (citing <u>Friedman</u>, 310 F.2d 381).  The decision by the first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations.  <u>Id.</u>  The difference between the two types of claims stems from their respective money-mandating statutes.  In wrongful discharge cases brought under the Military Pay Act, 37 U.S.C. § 204, <u>Martinez</u> explained, the service member can seek redress immediately upon separation from service; an appeal to a Correction Board constitutes a "permissive" rather than a mandatory remedy.  333 F.3d at 1303.  Because the Tucker Act does not require exhaustion of administrative remedies, a plaintiff's invocation of such a permissive

remedy neither prevents the accrual of his cause of action nor tolls the statute of limitations.

Disability retirement cases, however, are governed by 10 U.S.C. § 1201.[1]  As Friedman explained, in the context of section 1201, "Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore . . . no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act."  310 F.2d at 389.  As another decision of the Court of Claims artfully reasoned:

> The principle of these cases is: first, jurisdiction is conferred by Congress, not on this court, but on retiring boards and the Secretaries of the three armed services, to decide an officer's right to retirement for physical disability, and his consequent right to retired pay; second, it follows therefrom that we cannot acquire jurisdiction of such a claim until after the board and the Secretary have acted, or failed or refused to act, and not then unless the board and the Secretary acted arbitrarily or capriciously or contrary to law; third, since our jurisdiction could not be invoked until after the retiring board and the Secretary had acted, the statute of limitations on a suit in this court did not begin to run until they had acted . . . .

Furlong v. United States, 152 F. Supp. 238, 240-41 (Ct. Cl. 1957).  In other words, the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance.  Therefore, if at the time of discharge, the service member requested review by an appropriate board and the request was denied, or if the board heard the service member's claim and denied it, then the limitations period begins to run upon discharge.

---

[1]  "Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member, with retired pay computed under section 1401 of this title [10 U.S.C. § 1401], if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)."  10 U.S.C. § 1201(a) (2000).

Real, 906 F.2d at 1560. But where the claimant "has not had or sought a Retiring Board,[2] his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for disability retirement)." Friedman, 310 F.2d at 396. Thus where the service member was released from service without a board hearing and subsequently files a claim for disability retirement before a military correction board, "the Correction Board becomes the first proper board to act (or to be asked to act) on the matter, and the claim does not ripen until that Board's action is final." Id. at 392. The Correction Board proceeding "becomes a mandatory remedy; without it, the case in this court would be dismissed as premature on the ground that the plaintiff did not seek or obtain a final decision within the administrative hierarchy." Id. (emphasis added).

Given the differences underlying claims for unlawful discharge and disability retirement, our holding in Martinez did not disturb the so-called "first competent board rule" of Friedman. Indeed, the government does not contend otherwise. The government instead argues that Chambers' case falls into an exception to the Friedman rule addressed by this court in Real. This exception, according to the government, applies to cases where "the service member is aware of the prospect of disability retirement but does not obtain a decision entitling him to disability retirement from the appropriate board during service." The government contends that as of 1987, Chambers knew he had PTSD and, based on his 30 percent disability rating from the VA, knew that his PTSD was service connected. At that time, the government argues,

---

[2] A Retiring Board, now called Physical Examination Board or PEB, determines a service member's fitness for duty and entitlement to disability retirement once a Medical Examination Board or MEB finds the soldier does not meet the Army's standards for retention under its regulations.

Chambers knew all of the facts supporting his disability retirement claim, yet failed to apply to the ABCMR until 1999, twelve years later.

We do not read Real as broadly as the government. In Real, the trial court dismissed the plaintiff's claim for disability benefits as time-barred, holding that his claim accrued upon discharge from the Navy in 1974, not upon the final decision of the Board for the Correction of Naval Records in 1987. The Court of Federal Claims concluded that, even though Real knew or should have known that he suffered from significant medical problems prior to discharge and understood that he would be ineligible for future disability benefits if he did not challenge the Navy's finding that he was fit for duty, he did not contest that determination and thus waived the right to further review. Real v. United States, 18 Cl. Ct. 118, 128 (Ct. Cl. 1989).[3]

On appeal, this court began by restating the general rule of Friedman that if the service member had neither requested nor been offered consideration by a disability board prior to discharge, the later denial of his petition by a corrections board, not his

---

[3]     The Claims Court found a striking similarity between Real's case and Huffaker v. United States, 2 Cl. Ct. 662 (1983). In Huffaker, the plaintiff was examined by Navy physicians upon discharge and found fit for duty. 2 Cl. Ct. at 663. He then certified that he was informed of and understood the provision of BUMEDNIST INSTRUCTION 6120.6, providing that "all personnel of the naval service be made aware of the possibility of being denied any [disability] benefits . . . by reason of not rebutting, under certain circumstances, a finding that they are fit for duty." Id. at 664. The Court of Claims held that

> [p]laintiff's failure to act in response to the Navy's conditioning further medical evaluation upon plaintiff's objections, and assertion that absent an objection plaintiff would receive no further consideration, amounted to a waiver by plaintiff. In turn, the waiver of any further action triggered the running of the limitations period.

Id. Huffaker's certification thus amounted to a waiver of his rights to a physical evaluation board and triggered the running of the statute of limitations.

---

discharge, triggers the statute of limitations. "However," we explained, "there are circumstances under which the service member's failure to request a hearing board prior to discharge has been held to have the same effect as a refusal by the service to provide board review." 906 F.2d at 1560 (citing Miller v. United States, 361 F.2d 245, 175 Ct. Cl. 871 (1966); Huffaker, 2 Cl. Ct. 662). Specifically, such failure can invoke the statute of limitations when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge. Id. at 1562. Real thus framed the issue before it as "[w]hether the veteran's knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge." Id. Such knowledge, this court held, must be determined by reference to the statutory requirements for disability retirement, namely, 10 U.S.C. § 1201. Id. Because the trial court failed to gauge Real's knowledge by reference to section 1201, we reversed and remanded, noting that

> [w]hen the state of Real's knowledge of his condition is measured with regard to [statutory] requirements, it is highly questionable whether he should be found to have had either actual or constructive knowledge that he was entitled to disability benefits. There is no indication in the record before this court that Real could (let alone should) have known that he was suffering from a permanently disabling disorder in 1974.

Id. at 1563.

Real thus concerned the service member's knowledge at the time of discharge, not, as here, many years after discharge. Real did not fashion a rule, as the government suggests, that a service member's claim accrues when he learns of his disabling condition, whether before or after discharge. Indeed, such a rule would be

untenable, given that a military board must determine eligibility for disability retirement before such a claim accrues. There can be no waiver of board review absent an opportunity for such review, as at discharge. Simply put, after discharge, a veteran has nothing to waive. The appropriate inquiry under Real, therefore, is whether at the time of his separation from the Army in 1970, Chambers knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected. We hold that the record is bereft of any evidence that Chambers possessed such knowledge. The medical diagnoses Chambers received prior to discharge — "transient stress reaction," "transient situational stress," and "mild situational anxiety" — all indicated that his condition was minor, temporary, and circumstantial. Nothing in the record indicates that Chambers considered these diagnoses to be erroneous. Chambers also knew that he was returned to regular duty after his brief hospitalizations. Thus, in 1970, he had no basis for concluding the Army erred in finding him fit for duty and hence suitable for discharge. The Real exception does not apply.

We, therefore, follow the general rule in Friedman to hold that Chambers' cause of action for disability retirement benefits in the Court of Federal Claims did not accrue until the ABCMR, the first competent board, finally denied his claim in September 2000. Because Chambers filed his Tucker Act suit in 2003, within the six-year limitations period of 28 U.S.C. § 2501, his claim for disability retirement pay was not time barred. Jurisdiction in the Court of Federal Claims, as well as this court, was thus proper.

II.

We review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record without deference. McHenry v. United States, 367 F.3d 1370, 1377 (Fed. Cir. 2004). That is, we reapply the statutory review standards. Accordingly, we will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Haselrig v. United States, 333 F.3d 1354, 1355 (Fed. Cir. 2003).

We agree with the Court of Federal Claims that the decision of the Board had substantial evidentiary support. As an initial matter, we note that the Army regulations in effect at the time of Chambers' discharge in 1970, rather than current regulations, guide our analysis. At the time of discharge, and the pre-discharge medical examination, Chambers was effectively performing his military duties. As the Board correctly determined, therefore, under the standards set by the U.S. Army Physical Disability Agency, Chambers was presumed fit.

Moreover, we cannot say that the physician who examined Chambers prior to his separation from active duty erred in concluding, based on Chambers' medical record and the governing Army regulations, that Chambers suffered no psychological abnormalities. After all, in 1970, AR40-501 provided that "transient personality disruptions of a nonpsychotic nature and situational maladjustments due to acute or special stress do not render an individual unfit." Chambers' pre-discharge diagnoses — "transient stress reaction," "transient situational distress," and "mild situational anxiety" — appear to fall squarely within the boundaries of AR40-501. The Board likewise did not err in determining that Chambers' symptoms lacked the criteria for referral to a

Medical Examination Board set out in AR40-501, i.e., "persistence or recurrence . . .  sufficient to require extended or recurrent hospitalization, necessity for limitations of duty or duty in protected environment or resulting in interference with effective military performance."  Each of Chambers' three medical incidents was of short duration and had no effect on the scope or performance of his military duties.  In sum, under the standards in existence in 1970, Chambers was fit for duty.  This is not to say that, in retrospect, Chambers' symptoms appear unrelated to PTSD.  Indeed, the VA deemed Chambers' PTSD service-connected and, ultimately, awarded him a 100 percent disability rating.  Chambers, however, cannot now complain that the Army failed to diagnose him in 1970 with a psychological condition unknown until 1980.  This fact alone distinguishes Chambers' case from Proper v. United States, 154 F. Supp. 317 (Ct. Cl. 1957), which involved multiple sclerosis, a known disease with known symptoms, which presented itself sufficiently during service member's active duty to warrant such a diagnosis at the time of his separation physical.

Chambers' contention that the ABCMR wrongly relied on an undisclosed "off-the-record" opinion of a Medical Doctor Advisor has little merit.  We note that it is unclear whether Chambers preserved this argument on appeal by raising it in his reconsideration papers before the ABCMR or the Court of Federal Claims.  In any event, we see nothing nefarious in the Board's limited reliance on the opinion of its own medical advisor, as it is permitted to do under the statute.  See 10 U.S.C. § 1555.  The ABCMR, moreover, appears to have relied on this advice only to observe that the doses of Valium and Librium prescribed to Chambers as a result of his hospitalizations were "low."  Finally, because we hold that substantial evidence supports the ABCMR's denial

04-5134                                    15

of Chambers' claim, any alleged error in the Board's reliance on such advice is harmless.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Federal Claims is

<u>AFFIRMED</u>.

# United States Court of Appeals for the Federal Circuit

04-5134

JAMES S. CHAMBERS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

DYK, <u>Circuit Judge</u>, dissenting.

In <u>Fisher v. United States</u>, 402 F.3d 1167 (Fed. Cir. 2005), we recently held that military disability claims are justiciable. The majority now holds that such claims do not accrue until a correction board has rejected a disability claim (where the service member acquires knowledge of his disability after discharge). Thus, there is effectively no statute of limitations with respect to such claims.[1] In my view the result reached here is inconsistent with our <u>en banc</u> decision in <u>Martinez v. United States</u>, 333 F.3d 1295, 1310 (Fed. Cir. 2003) (en banc), where we held that wrongful discharge claims accrue at the time of the service member's discharge and not when a correction board rejects the claim. I respectfully dissent from the majority's decision that the statute of limitations has not expired.

In my view, no theory supports the majority's conclusion.

---

[1]    The correction board does have a three-year statute of limitations. 10 U.S.C. § 1552(b) (2000). But that deadline is routinely waived. <u>See</u> Pl. App. at 51.

First, the majority appears to rely on the fact that the Secretary has provided by regulation that disability determinations are to be made by a series of medical boards. Ante at 9. The pertinent provisions of the relevant Army regulation, AR 635-40 Physical Evaluation for Retention, Retirement, or Separation, require a commander to refer a solider "unable to perform the duties of his or her office" to the responsible medical facility, which then refers the soldier to a Medical Evaluation Board, and then to a Physical Evaluation Board to determine whether the service member should be discharged for disability. AR 635-40 §§ 4-8, 4-9, 4-10, 4-13 & 4-17(a)(4). The ultimate decision to discharge the service member is finally carried out by the Personnel Command for the Secretary of the Army. Id. §§ 4-19(b), 4-22(g)(5) & 4-24. But there is no provision for convening a Physical Evaluation Board after the discharge of a member to address disability claims, and the statute itself does not mandate that only these medical boards make such a determination. See id. § 4-17 (The Physical Evaluation Board "is not a statutory board. Its findings and recommendations may be revised."). Even if review by a Physical Evaluation Board were available after discharge, we have held that failure to resort to such a Board is a waiver of the right to seek a Board determination. See Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing Miller v. United States, 361 F.2d 245 (Ct. Cl. 1966)). Thus, where knowledge of the disability is obtained after discharge, the only administrative route open to the veteran is to seek relief before a correction board—a mechanism that is equally available in unlawful discharge and disability retirement cases. The same statute provides for correction board relief in discharge cases and disability retirement cases. See 10 U.S.C. § 1552 (2000).

Second, we held in <u>Martinez</u> that the correction board is permissive only and not essential to the accrual of the cause of action, stating that "an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge." 333 F.3d at 1304. If resort to a correction board is permissive in discharge cases, it is permissive in disability cases, and cannot toll the limitations period. Under <u>Martinez</u> correction board exhaustion is not required. "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." <u>Id.</u> at 1303.[2]

Third, the majority (correctly) notes that the 40-year-old decision in <u>Friedman v. United States</u>, 310 F.2d 381 (Ct. Cl. 1962) held that a "judicial claim for disability retirement pay does not accrue on release from active duty but rather on <u>final</u> action of a board competent to pass upon eligibility for disability retirement (or upon refusal of a request for such a board)." <u>Id.</u> at 395-96. But in my view <u>Friedman</u> is not consistent with <u>Martinez</u>. It is true that we did not directly overrule <u>Friedman</u> in <u>Martinez</u>, and indeed cited that case in the majority opinion. <u>Martinez</u>, 333 F.3d at 1304. But the <u>Martinez</u> opinion cited <u>Friedman</u> for a proposition directly opposite to the majority's holding here. <u>Martinez</u> cited <u>Friedman</u> for the proposition that "[t]his court and the Court of Claims have frequently addressed and rejected the argument that the cause of action for unlawful discharge does not accrue until the service member seeks relief from a

---

[2]    The dissent in <u>Martinez</u> advocated a theory that a second cause of action accrued under the correction board statute, which the dissent regarded as money mandating. <u>See id.</u> at 1321 (Plager, J., dissenting). Chambers does not argue here that a separate cause of action accrued in 2000, when the correction board denied his claim.

correction board." Id. (citing Friedman, 310 F.3d at 396). Under these circumstances Martinez can hardly be read as endorsing the majority's view of Friedman.

Fourth, the majority holds that the difference between the result here and the result in Martinez is justified by the statutory language of 10 U.S.C. § 1201, which specifies that "[u]pon a determination by the Secretary concerned that [the] member . . . is unfit to perform the duties of the member's office . . . because of physical disability . . . the Secretary may retire the member, with retired pay . . . ." 10 U.S.C. § 1201 (2000). A secretarial determination is also required in the discharge of service personnel before the expiration of their enlistment. 10 U.S.C. § 1169 (2000); Harmon v. Brucker, 355 U.S. 579, 582 (1958) ("Congress granted to the Secretary of the Army authority to issue discharges."). Thus both in the disability context and in Martinez, there is a challenge to the Secretary's determination, and that challenge is a predicate to success on the claim for compensation. In Martinez, the plaintiff prayed that the Secretary's determination of misconduct in an Article 15 proceeding be expunged, that he be restored to active duty and be retroactively promoted, and that he be awarded back pay as a consequence. See 333 F.3d at 1300. In the present case, Chambers seeks to have the Secretary's determination of honorably discharging him converted to a disability retirement, and that he be awarded disability retirement benefits as a consequence. The requirement of a secretarial determination in § 1201 does not provide any basis to distinguish Martinez.

Finally, the majority's holding today perpetuates a serious anomaly in our disability retirement jurisprudence. Under Real, if a service member has knowledge of his disability at the time of discharge and fails to demand a Physical Evaluation Board, he is deemed to have waived the right to board evaluation and the cause of action

04-5134                                              4

accrues immediately upon discharge.  906 F.2d at 1562.  Under the majority's holding today, however, if that same service member acquires knowledge of his disability the day after discharge, he must resort to a correction board, and the cause of action does not accrue until after a correction board has ruled.

Of course, it would be unfair to hold that a service member who was unaware of a disability is nonetheless barred from suit by the passage of six years from the time of discharge.  This problem is solved by the doctrine that "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed."  Martinez, 333 F.3d at 1319. Chambers was diagnosed with Post-Traumatic Stress Disorder in 1987, and applied (successfully) for veterans benefits.  Despite having knowledge of his disability claim, Chambers did nothing for the next 12 years, and did not file suit in the Court of Federal Claims until 2003.  In these circumstances his claim is barred.

In summary, under the majority's holding, where the service member acquires knowledge of disability after discharge, there is effectively no Tucker Act statute of limitations.  The majority's holding opens the door to stale claims that are decades old. I respectfully dissent from the majority's holding as to the statute of limitations.