NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**MALCOLM PIPES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————————

2019-1189

———————————————

Appeal from the United States Court of Federal Claims in No. 1:15-cv-01163-SGB, Senior Judge Susan G. Braden.

———————————————

Decided: November 15, 2019

———————————————

CHERI L. CANNON, Tully Rinckey PLLC, Washington, DC, argued for plaintiff-appellant.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, DEBORAH ANN BYNUM, ROBERT EDWARD KIRSCHMAN, JR.

———————————————

Before PROST, *Chief Judge,* CLEVENGER and MOORE, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Captain Malcolm W. Pipes ("Pipes") appeals from the final judgment of the United States Court of Federal Claims ("Claims Court") granting Judgment on the Administrative Record to the United States on his complaint. *Pipes v. United States*, 139 Fed. Cl. 538 (2018). For the reasons set forth below, we reverse the Claims Court's final judgment and remand with instructions to remand the case to the Air Force Board for Correction of Military Records for further assessment consistent with this opinion.

BACKGROUND

I. Facts

Pipes enlisted in the United States Air Force ("USAF") in 1983. He served on active duty for seven years and in the United States Air Force Reserve for nine years. In 2004, while Pipes was in the Reserve, the Air Force established stringent physical fitness standards, which subjected Reserve members to an annual scored fitness assessment. All members of the Air Force were notified that they must be physically fit to support the Air Force mission. J.A. at 91. Members who failed to satisfy physical fitness requirements would be subject to discharge. On October 1, 2004, Pipes was informed by his Flight Commander that members who score at the marginal or poor fitness levels would be entered into the Self-paced Fitness Improvement Program ("SFIP"). On November 7, 2004, Pipes failed his fitness assessment which was conducted during a scheduled Unit Training Assembly ("UTA"). UTA is prescribed by the Secretary of the Air Force as a form of Inactive Duty Training ("IDT"). J.A. at 189. During that UTA, Pipes was formally enrolled in the SFIP and was given a written order from his Commander to "exercise at least five times per week," performing the exercises

specified by the SFIP, which included pushups, crunches, and a 1.5 mile run.

Shortly before that first fitness assessment, Pipes began receiving elevated blood pressure readings. Though Pipes continued his engagement in the SFIP, he informed his Commander that he was having blood pressure issues and trouble with the running portion of the SFIP. Pipes' Squadron Commander expressed concern about Pipes' high blood pressure and was concerned a vigorous fitness program could lead to injury, stroke, and heart attack. However, in August 2005, Pipes failed a second fitness assessment and was once again given orders to exercise five days per week to address his repeat fitness assessment failures.

On January 6, 2006, due to his continuously elevated blood pressure readings, Pipes reported high blood pressure as a concern on his annual USAF physical screening. On February 5, 2006, Pipes was evaluated by Dr. Granger, a USAF medical doctor. Pipes produced medical records to Dr. Granger from his civilian physician showing elevated blood pressure as well as a USAF form completed by his civilian physician stating her concerns regarding Pipes' continued participation in the SFIP. Dr. Granger's evaluation demonstrated that Pipes had elevated blood pressure, which ranged between 151/94 when sitting to 146/99 when standing. Further, Dr. Granger rendered a diagnosis of hypertension and obesity.[1] Unlike Pipes' civilian physician, Dr. Granger did not relay this health information to Pipes and instead communicated to him the need for

---

[1] Both Pipes' Squadron Commander, John Rowlands, and Logistics Support Squadron Commander, John Snowman, assert in their affidavits that "Capt. Pipes was not obese, and his correct BMI was 28.9 as recorded in his physical fitness assessment records for 4 Feb 2006." J.A. at 74; *see also* J.A. at 58.

healthy living and for additional exercise. According to Pipes' Commander, the standing policy of his wing unit was to bar any member observed with untreated hypertension from exercise in a SFIP. Under the existing command, the medical squadron was ordered to advise the Commander of any member who should so be barred. In Pipes' case, his Commander concluded that the medical squadron failed to follow the standing orders. As a result, Pipes was not excused from the SFIP he had been ordered to perform.

After being cleared for continued participation in the SFIP by Dr. Granger, Pipes participated in a third fitness assessment that same day. However, Pipes became ill during the run portion and was unable to complete the assessment. Pipes participated in additional fitness assessments on May 7, 2006 and July 10, 2006, both of which he also failed. After the July 2006 fitness assessment, Pipes reported to Major Lara Rowlands, the unit fitness advisor, that he was running in accordance with the SFIP, but that he was not seeing any improvement and that he often felt ill after running. Nevertheless, the medical squadron again failed to remove Pipes from the SFIP.

On September 3, 2006, Pipes became ill while running in accordance with the SFIP and experienced "a headache, difficulty breathing, dizziness, an impression of being overheated, and a general feeling of malaise." J.A. at 14 (internal citation omitted). These symptoms continued into the night, requiring Pipes to go to the hospital around 2:00 AM on September 4, 2006. Pipes was diagnosed with a Cerebrovascular Accident, *i.e.*, a stroke.

On September 6, 2006, Pipes contacted his unit concerning the stroke. On December 5, 2006, without performing a Line of Duty ("LOD") determination, the USAF informed Pipes that "he was not eligible to receive disability benefits, because his stroke did not occur during inactive duty training." J.A. at 14.

On November 26, 2007, Pipes was determined by the USAF to be medically disqualified for continued military duty. However, in lieu of an administrative discharge, the USAF informed Pipes that he was eligible for retirement. On January 30, 2008, Pipes applied for transfer to the Retired Reserves in lieu of administrative discharge for physical disqualification. On September 15, 2008, Pipes was assigned to the Retired Reserves, and the assignment was backdated, effective September 4, 2006. In October 2008, Pipes was informed that his retirement from the USAF was approved. However, Pipes, who was forty-seven years old at the time, would not be able to obtain the approved retirement benefits until he was sixty years old.

On or about October 15, 2010, Pipes obtained a copy of his USAF medical records. Upon review of these records, Pipes learned for the first time that during his February 4, 2006 medical clearance exam, the USAF Medical Examiner observed that his blood pressure was abnormally high, rendered a diagnosis of untreated hypertension, but nonetheless cleared him for continued participation in the SFIP and his fitness assessments.

On August 10, 2011, Pipes filed an Application For Correction Of Military Record with the Air Force Board for Correction of Military Records ("AFBCMR") requesting a LOD determination for disability retirement instead of his already-approved regular retirement. On June 4, 2012, the USAF Office of the Assistant Secretary for Military and Reserve Affairs issued a Memorandum for the AFBCMR recommending denial of the change in records to reflect Pipes was permanently medically retired. On July 5, 2012, Pipes responded to the June 4, 2012 Memorandum by providing supplemental documentation to the AFBCMR. On February 28, 2013, the AFBCMR denied Pipes' Application for Correction of Military Records, finding that he was not entitled to disability retirement based on a determination that he did not demonstrate the existence of a material error or injustice. On April 30, 2013, and again on July 3,

2013, Pipes requested reconsideration by the AFBCMR to remedy the decision denying him the ability to be permanently and medically retired as of 2007. On August 11, 2014, the USAF Office of the Assistant Secretary affirmed the AFBCMR's denial.

## II. Procedural History

On October 9, 2015, Pipes filed a Complaint in the Claims Court alleging that he was denied the disability retirement pay and benefits to which he was allegedly entitled under 10 U.S.C. § 1204.

On May 8, 2017, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and 12(b)(6), or, in the alternative, for Judgment On The Administrative Record, pursuant to RCFC 52. On June 8, 2017, Pipes filed a Cross-Motion For Judgment On The Administrative Record And Response to the Government's May 8, 2017 Motion To Dismiss.

On September 29, 2017, the Claims Court issued, under seal, a Memorandum Opinion And Order denying the Government's Motion To Dismiss and the Government's Motion For Judgment On The Administrative Record, and granting Pipes Cross-Motion For Judgment On The Administrative Record. *Pipes v. United States*, 134 Fed. Cl. 380, 389 (2017). The September 29, 2017 Memorandum Opinion And Order also vacated the February 28, 2013 AFBCMR Decision denying Pipes' Application For A Correction Of Military Records and remanded the case to the AFBCMR for 120 days "to reconsider Plaintiff's Application For A Correction Of Military Records in light of the new evidence presented by the parties," pursuant to RCFC 52.2(a), (b)(1)(B).[2] *See id.* On October 13, 2017, the court

---

[2] This new evidence consisted of "supplemental declarations of relevant witnesses," as well as Pipes' "STRs

issued the public version of the September 29, 2017 Memorandum Opinion And Order.  *See id.*

On February 1, 2018, an Air Force Reserve Command/Judge Advocate ("AFRC/JA") issued an Advisory Opinion to the AFBCMR recommending that the AFBCMR deny Pipes' requested relief because it believed that Pipes' non-duty status rendered the order by his Commander to participate in the SFIP illegal.

On May 3, 2018, the AFBCMR issued a reconsideration decision ("Reconsideration Decision") concerning Pipes' Application For Correction Of Military Records.  In its Reconsideration Decision, the AFBCMR noted that the Medical Advisor found "it plausible that the applicant's participation in vigorous training for his Fitness Assessment, during the 12-hour cycle of time between his alleged running activity and onset of stroke symptoms, contributed to the occurrence of a stroke on or about 4 Sep 06."  J.A. at 168–69.  The AFBCMR opined that "adherence to SFIP could . . . be legally mandated when the applicant was in a duty status."  J.A. at 172.  However, the AFBCMR agreed with the AFRC/JA that (1) Pipes was never lawfully ordered to participate in the SFIP, and (2) because he was never lawfully ordered to participate in the SFIP, Pipes was not in an IDT status when he did so participate.  J.A. at 172.  Accordingly, the Board denied Pipes' requested relief.

On September 11, 2018, the Claims Court, in agreement with the Reconsideration Decision, issued a Memorandum Opinion and Final Order on Remand granting the Government's Motion for Judgment on the Administrative Record and denying Pipes' Cross-Motion for Judgment on the Administrative Record.  The Claims Court's decision

-----

and USAF medical records" provided by the VA.  *Pipes*, 134 Fed. Cl. at 405.

became final on September 11, 2018. Pipes timely appealed on November 5, 2018.

## STANDARD OF REVIEW

We review a decision of the Claims Court granting or denying a motion for judgment on the administrative record *de novo*, and "apply the same standard of review[.]" *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004); *see also Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). Thus, this Court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers*, 417 F.3d at 1227 (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)).

## DISCUSSION

Pipes' October 9, 2015 Complaint alleged that he was denied the disability retirement pay and benefits to which he is and has been entitled under 10 U.S.C. § 1204, which provides in relevant part:

> Upon a determination by the Secretary concerned that a member of the armed forces . . . is unfit to perform the duties of his office, grade, rank, or rating because of physical disability, the Secretary may retire the member with retired pay . . . , if the Secretary also determines that . . . the disability . . . is a result of an injury, illness, or disease incurred or aggravated in line of duty after September 23, 1996 . . . *while performing active duty or inactive-duty training*[.]

10 U.S.C. § 1204(2)(B)(i) (2000) (italics added).

First, it is not disputed that Pipes is unfit to perform the duties of his office, grade, rank, or rating because of physical disability. Second, it is not disputed that the disability plausibly resulted from an injury incurred or aggravated after September 23, 1996, while performing his

SFIP. Finally, it is not disputed that Pipes' injuries did not occur while in active duty. Thus, the only issue in dispute is whether Pipes' disability resulted from an injury incurred or aggravated *while performing inactive-duty training*.

Section 101 of Title 10 of the United States Code defines "inactive-duty training" as:

(A) duty prescribed for Reserves by the Secretary concerned under section 206 of title 37 or any other provision of law; and

(B) special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned.

10 U.S.C. § 101(d)(7). Pipes argues that his participation in the SFIP constituted "inactive-duty training" under 10 U.S.C. § 101(d)(7)(B).

As noted above, the AFBCMR agreed with the AFRC/JA that Pipes' participation in the SFIP did not constitute "inactive-duty training" because Pipes was never lawfully ordered to participate in the SFIP. J.A. at 172. Specifically, the AFBCMR, relying on AFI 10-248 (AFRC Sup1_I, May 2004), found that any order by Pipes' Commander placing him in the SFIP was unlawful due to Pipes' supposed "non-duty status."[3] As the AFBCMR noted, however, Pipes' adherence to the SFIP could have been legally

---

[3]  As the AFRC/JA noted in its Advisory Opinion, upon which the AFBCMR relies, an "order requir[ing] participation while in a non-duty status" is "illegal" because "reservists are not subject to the Uniform Code of Military Justice when not in status." J.A. at 162.

mandated if Pipes was in a duty status, making him subject to the Uniform Code of Military Justice ("UCMJ"). J.A. at 172.

AFI 10-248 (AFRC Sup1_I, May 2004) states that for each Unit Reservist, Individual Mobilization Augmentee, or Participating Individual Ready Reservist member at a marginal or poor fitness level will be enrolled in a SFIP by their commander. *See* AFI 10-248 (2004 Supp.) at 30. Members are entered into the SFIP by letter "during the same UTA/IDT in which the member completed the fitness assessment." *See id.* During that UTA, which is a form of inactive duty training, members are in a duty status. *Id.* at 28. Orders issued to reserve members during UTAs are valid orders.

According to Pipes' Commander, "Capt. Pipes failed a fitness test on 7 Nov. 2004. He was formally enrolled in the Self-Paced Fitness Program (SFIP) the same day." J.A. at 56. Thus, on the record before us, it is clear that: (1) Pipes went into a duty status during the Nov. 7, 2004 UTA/IDT in which he completed his fitness assessment; (2) because he was in a duty status, Pipes was subject to the UCMJ, *see* 10 U.S.C. § 802(a)(3)(A)(i); and (3) while he was in a duty status and subject to the UCMJ, Pipes was ordered, in writing, by his Commander to enroll in a personalized SFIP requiring him to exercise at least five times per week. Pipes' order to engage in the SFIP was renewed in August 2005, if not in each of the subsequent UTAs in which he failed his fitness assessments. As the AFBCMR noted, "adherence to SFIP could . . . be legally mandated when the applicant was in a duty status." J.A. at 172. As Pipes was in a duty status, the order from his Commanding

Officer to participate in the SFIP was not unlawful for that reason.[4]

Thus, we hold that, to the extent their analysis turned on Pipes' duty status at the time of his orders, both the AFBCMR and the Claims Court erred in concluding that Pipes was not lawfully ordered to perform the SFIP designed for him. The consequence of that error is the absence of any consideration of Pipes' request for disability retirement in the light of the fact that he was ordered to perform exercises that caused his stroke and hence his retirement. Thus, the argument that Pipes was in a non-duty status when ordered to perform his SFIP is no longer a valid rationale for denying his disability retirement. Our holding is limited to a determination that Pipes was ordered to engage in the SFIP when in a duty status.

We therefore reverse the decision of the Claims Court, agreeing with the AFBCMR, that Pipes is not entitled to a disability retirement under 10 U.S.C. § 1204(2)(B)(i) (2000) due to his non-duty status at the time he was ordered to participate in the SFIP. The case is remanded with instructions to remand the case to the AFBCMR for further

---

[4] As defined by the Air Force, SFIP is intended to be a "remedial program recommended for traditional Reservists," such as Pipes, with participation in SFIP "encouraged" and generally "not mandated." AFI 10-248 (AFRC Sup1_I, May 2004) at 46; J.A. at 221. At the time of Pipes' stroke, the AFI made clear that Reservists could participate in SFIP "on or off duty." AFI 10-248 (AFRC Sup1_I, May 2004) at 84. But in this case, for reasons not explained by the Air Force, the apparently *sui generis* SFIP designed for Pipes to perform when in civilian status went beyond recommendation and encouragement, being mandated by lawful orders issued during times when Pipes was in inactive duty status.

assessment of Pipes' request for correction of his military records.

**REVERSED AND REMANDED**

COSTS

The parties shall bear their own costs.