NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BYRON O. WOODS, SR.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-2261

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01462-SSS, Judge Stephen S. Schwartz.

---

Decided:  July 22, 2022

---

BYRON O. WOODS, SR., Moreno Valley, CA, pro se.

JANA MOSES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

Before REYNA, LINN, and HUGHES, *Circuit Judges*.

PER CURIAM.

Byron O. Woods, Sr. appeals a decision of the United States Court of Federal Claims dismissing his complaint for lack of subject matter jurisdiction. Because Mr. Woods's claims fall outside the scope of the Court of Federal Claims' jurisdiction, we affirm.

I

Mr. Woods served in the Marine Corps from 1989 to 1993 and re-enlisted as a recruiter in 2002. Order at 3, *Woods v. United States*, No. 20-1462C (Fed. Cl. June 23, 2021), ECF No. 20 (*Order*). In February 2007, he was diagnosed with stage three chronic kidney disease and his diagnosing physician recommended that he not serve in active combat duty. *Id.*

Around this time, in March 2007, Mr. Woods's commanding officer initiated a non-judicial punishment against him for dereliction of duty due to issues in Mr. Woods's performance and discipline. *Id.* at 4. Mr. Woods at first demanded a court martial but later decided to accept the non-judicial punishment on his record instead. *Id.* Although his punishment was suspended, he received an adverse fitness report and for three weeks was kept in a state of "legal hold" pending court martial. *Id.*

Three more doctors recommended against Mr. Woods continuing his service or re-enlisting. In April 2007, a second doctor, Dr. Shagun Chopra, recommended "against reenlistment given the progressive nature" of Mr. Woods's disease. *Id.* at 3. A third evaluated Mr. Woods and concluded that while he "is qualified to re-enlist," he is not "recommended," and should be physically examined by the medical board. *Id.* In May 2007, a fourth doctor wrote that Mr. Woods was not suitable for further duty. She additionally expressed doubt about whether Mr. Woods was even qualified for limited duty because he was "not expected [to] improve." *Id.*

Two days later, Lieutenant John Seyrele gave Mr. Woods his separation physical and noted in the related documents that Mr. Woods had a history of "blood and protein" in his urine. *Id.* Lieutenant Seyrele then qualified Mr. Woods for discharge. *Id.* Mr. Woods was assigned an initial disability rating of 30%, which he requested be increased. *Id.* at 4.

Ultimately, Mr. Woods's disability rating was revised up to 50%. *Id.* On June 2007, Mr. Woods was separated with a reentry code rendering him eligible to re-enlist. *Id.* Upon his separation, Mr. Woods signed an acknowledgment stating that he did not have a medical condition that would disqualify him from the performance of his duties or for processing through the Disability Evaluation System. *Id.* The acknowledgment nevertheless noted that some conditions might render Mr. Woods eligible for benefits from the Department of Veterans Affairs. *Id.*

In August 2018, Mr. Woods filed an application with the Board for Correction of Naval Records to change his discharge status to reflect placement on the Permanent Disability Retirement List and to strike the non-judicial punishment from his record. *Id.* The Board first requested an advisory opinion from the Secretary of the Navy Council of Review Boards. The advisory opinion stated that there was no known "nexus" between Mr. Woods's poor performance and his kidney condition sufficient to warrant placing Mr. Woods on the disability retirement list. Order at 3. The Board "substantially concurred" with the advisory opinion and concluded that there was "insufficient evidence to support a finding that Mr. Woods's kidney disease prevented him from performing the duties of his office, grade, rank or rating." *Id.* For this reason, the Board decided that no changes to Mr. Woods's medical record were necessary. *Id.* Even so, the Board found that Mr. Woods's non-judicial punishment was unsupported by evidence and accorded partial relief by striking it from his record.

On October 16, 2020, Mr. Woods filed a complaint in the Court of Federal Claims. Compl., *Woods v. United States*, No. 20-1462C (Fed. Cl. Oct. 16, 2020), ECF No. 1. In his complaint, Mr. Woods requested that the Court of Federal Claims place him retroactively on the permanent disability retirement list as of April 20, 2007, the day he was evaluated by Dr. Shagun Chopra. *Id.* at 39. Mr. Woods additionally requested $93,646.80 in retroactive disability retirement payments. *Id.* Finally, he requested that the Court of Federal Claims remove mention of his legal hold from his record, consistent with the Board's prior expungement of his non-judicial punishment. *Id.* He argued that the legal hold, without a court martial, was a violation of his constitutional rights. *Id.*

The government moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims. Mot. to Dismiss at 1, *Woods v. United States*, No. 20-1462C (Fed. Cl. Feb. 19, 2021), ECF No. 14. In its Rule 12(b)(1) motion, the government argued that Mr. Woods had failed to file his complaint within the six years allotted by the statute of limitations after his discharge, during which time he was aware of his medical condition. *Id.* The government also argued that the Court of Federal Claims lacked the necessary subject matter jurisdiction to alter Mr. Woods's records to remove mention of his legal hold, because that would be a non-monetary form of relief to which the Tucker Act does not extend. *Id.* at 1–2. Alternatively, the government requested that the Court of Federal Claims grant its Rule 12(b)(6) motion because Mr. Woods's disability retirement claim "is a non-justiciable challenge to the merits of the determination that he was fit to separate from the Marine Corps notwithstanding his kidney condition." *Id.* at 2.

The Court of Federal Claims rejected the government's Rule 12(b)(6) motion, *Order* at 6–7, but granted its 12(b)(1) motion and dismissed Mr. Woods's suit for lack of subject matter jurisdiction, *id.* at 9.

Mr. Woods appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the Court of Federal Claims' dismissal for lack of subject matter jurisdiction de novo. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). "[J]urisdiction [must] be established as a threshold matter." *Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353, 1362 (Fed. Cir. 2019). As the plaintiff, Mr. Woods bears the burden of establishing jurisdiction by a preponderance of the evidence. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). Although we give pro se plaintiffs more latitude in their pleadings than parties represented by counsel, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), such leniency does not relieve them of jurisdictional requirements, *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The Tucker Act limits the Court of Federal Claims' subject matter jurisdiction to claims "filed within six years after such claim first accrues." *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (quoting 28 U.S.C. § 2501). Because the statute of limitations for the Court of Federal Claims is "jurisdictional," it is "not susceptible to equitable tolling." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008). Additionally, claims made in the Court of Federal Claims must be "for money damages against the United States." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). "[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." *Id.* at 1173.

Here, Mr. Woods's claims fail the statute of limitations requirement because they were filed more than six years after they accrued in 2007. Regarding Mr. Woods's request to be placed on the permanent disability list and to receive disability backpay, generally, "if the service member ha[s] neither requested nor been offered consideration by a

disability board prior to discharge, the later denial of his petition by a corrections board, not his discharge, triggers the statute of limitations." *Chambers*, 417 F.3d at 1226. But there is an exception: if a "service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge," the effect is the same as a "refusal by the service to provide board review." *Id.* In other words, a "veteran's knowledge of the existence and extent of his condition at the time of his discharge [is] sufficient" to treat his failure to demand board review as a waiver of his right to do so. *Id.*

The exception applies to Mr. Woods's disability claims because Mr. Woods was aware of his medical condition prior to discharge. Multiple doctors told him that his condition was expected to worsen and that it was not recommended he re-enlist or continue service. Additionally, the Court of Federal Claims cited to evidence in the record suggesting that Mr. Woods specifically believed he was unfit for continued service. *Order* at 8. Despite this knowledge, Mr. Woods signed an acknowledgement upon his separation stating that he did not have a medical condition that would disqualify him from the performance of his duties. This acknowledgement should have alerted him that the Navy considered him ineligible for disability retirement, at which point he could have filed his disability claim. Instead, he failed to demand Board review at that time. Taken together, these facts indicate that Mr. Woods's statute of limitations began running upon his discharge in June 2007. Still, Mr. Woods did not request placement on the permanent disability list until 11 years had passed. Accordingly, the Court of Federal Claims does not have jurisdiction over Mr. Woods's disability claim.

The Court of Federal Claims similarly lacks the jurisdiction necessary to remove mention of Mr. Woods's legal hold from his records: that claim also accrued in 2007 when Mr. Woods was placed on a legal hold following his

acceptance of a non-judicial punishment. Yet Mr. Woods failed to file that claim until many years after the expiration of the statute of limitations. Furthermore, Mr. Woods's legal hold claim is a request for injunctive relief, rather than a request for money damages. And adjudication of Mr. Woods's legal hold claim is not necessary to adjudicate a money-mandating claim. *Cf. Fuller v. United States*, 127 Fed. Cl. 640, 645–46 (2016) (assessing a legal hold claim necessary to determining a money-mandating claim). The Tucker Act does not grant the Court of Federal Claims the necessary subject matter jurisdiction to accord such relief.

## III

Because Mr. Woods's claims are outside the jurisdiction of the Court of Federal Claims, we affirm.

**AFFIRMED**

No costs.