## BILL OF EXCEPTIONS SIGNED BY ANOTHER THAN THE TRIAL JUDGE.

Court of Appeals for Cuyahoga County.

LEICHTMAN ET AL V. STEIN ET AL.

Decided, January 26, 1914.

*Bill of Exceptions—Time for Perfecting—Death of Trial Judge—Contracts—Sub-Contractor Completes Work—Verbal Promise to Pay—Statute of Frauds—Debt or Default.*

1. When a bill of exceptions is *filed* within the time allowed by law and error proceedings duly instituted, neglect of the trial judge to settle the bill of exceptions and his subsequent sickness and death authorize another judge of the district to settle the bill, and it will be considered by the reviewing court though settled by such other judge long after the expiration of forty days from the overruling of the motion for a new trial.

2. L entered into a contract with K for the building of a house; K sublet the mason work to S, who entered upon his contract but discontinued his work upon K's refusal to pay him as agreed; thereupon L verbally agreed with S that if he would go on with his work and finish his contract with K, L would pay him the balance due K, for work already done and for finishing the job; S thereupon proceeded with his work, but upon the refusal of L to pay him again, discontinued work and sought to compel L to pay him for all work he had done on the house. *Held:* The verbal agreement between L and S was within the statute of frauds and unenforcible.

*M. V. Emmerman,* for plaintiff in error.
*A. Kolinsky,* contra.

WINCH, J.; MEALS, J., and GRANT, J., concur.

The first question in this case is whether the court can consider the bill of exceptions which was allowed under the circumstances shown by the certificate of the presiding judge of the common pleas court as follows:

"In this case, No. 123,577, *Samuel Leichtman et al* v. *F. Stein et al,* in signing this bill of exceptions, I deem it only

right to make this statement to accompany the bill, and then submit the whole matter to the court of appeals.

"It seems that the case was tried before Judge Babcock and a jury on the 24th of December, 1912—that is, the case was commenced on said date—and that a verdict was rendered in favor of the defendant. Afterwards a motion for a new trial was filed on the 31st of December, 1912, and on the 4th day of February, 1913, the motion was overruled. On the 14th day of March, 1913, plaintiff filed with the clerk of the court a bill of exceptions setting forth all the evidence and the charge of the court, to which bill of exceptions certain exceptions were filed by the defendant, and it seems that these exceptions never had been passed upon by the trial judge and that he did not sign the bill of exceptions within the time allowed by law; neither was there a refusal to sign, so far as the record shows. From information derived from both sides I find that there were several attempts made to secure a hearing before the trial judge and that nothing definite was done by him; that he had promised to sign from day to day and postponed doing so until, in June, he was taken ill and died, leaving the bill of exceptions unsigned. The case was taken to the court of appeals and there referred back to the trial court for the reason that the bill had not been signed. It came before this branch of the court as presiding judge of this district for the ensuing term, and, in order to get at the rights of the parties, I have had interviews with the attorneys on both sides, and the situation seems to be as above set out.

"I have been over the bill of exceptions, and it seems to be regular in form and that no serious objections are made to it. The exceptions that were filed were perhaps technically correct, but they savor of captiousness and they go mostly to matters that are immaterial—for instance, as to the statements that counsel made, and denying some things with respect to having witnesses subpoenaed, etc., which did not and could not go to the merits of the case or have anything to do with it.

"So far as I am able to see from the record the testimony was taken by a stenographer and the questions seem to be all down and the answers responsive to the questions.

"It is claimed by one side that Judge Babcock refused to sign the bill of exceptions. It is claimed by the other side that he kept on promising to sign, but neglected to do so; and in order to have the case properly reviewed and the parties have their legal rights, I have signed the bill of exceptions under the circumstances set out in the statement hereto attached.

　　　　　　　　　　　　　　　　　　"Willis Vickery,
"January 2, 1914,　　　　　　　　　　　　"Presiding Judge."

It thus appears that plaintiff in error filed the bill of excep-
tions within the time allowed by law. It further appears from
the transcript of the docket and journal entries that he filed
his petition in error in the court of appeals within the time al-
lowed by law. He thus did everything required of him by law
to entitle him to a review of his case on the evidence in this
court.

The question is, shall he be deprived of his rights by the neg-
lect of the trial judge to allow and sign his bill within the time
specified in the statute? The question, happily, is not an open
one. There are two cases in the 85th volume of the Ohio State
Reports which show the progress of the law regarding these
matters.

In the case of *Cincinnati Traction Co.* v. *Ruthman,* 85 Ohio St.,
62, the point decided was, that where the bill is filed within
time and the trial judge has allowed it within time, but has
neglected to certify his allowance by his signature, he may,
after time for signing has expired, sign the same, the holding
being: "Such act, when omitted to be done at the time pre-
scribed by statute by oversight of the judge, may be done by
him in a proper case *nunc pro tunc.*"

The case of *Pace* v. *Volk,* 85 Ohio St., 413, goes one step fur-
ther and holds:

"Proceedings in error being statutory, the requirement of
Section 11564, General Code, that 'the party excepting must
reduce his exceptions to writing, and file them in the cause, not
later than forty days after the overruling of the motion for a
new trial' is mandatory; but the provisions of the following sec-
tions defining duties of the clerk and of trial judges with re-
spect to a bill of exceptions which a party has so filed within
the time required are, as to the time of the performance of such
duties, directory merely.

"A bill of exceptions, taken upon the trial of a cause in the
court of common pleas, and by the exceptor reduced to writing
and filed in the office of the clerk within the forty days so lim-
ited, will become a part of the record to be considered by a re-
viewing court if the bill is signed by the trial judge and filed
in the office of the clerk in accordance with the requirement of
Section 11572, General Code."

The provision of Section 11572, here referred to, is that the plaintiff in error may file his petition in error, transcript and other papers in the proper court without waiting to perfect a bill of exceptions, and may *thereafter,* within the time limited by law, prepare, have allowed and signed a bill of exceptions, which, when duly allowed and filed in the trial court, he also may file in the error proceedings; *whereupon* it shall be received and considered by the reviewing court as if filed *with* his petition in error.

Section 11568, General Code, provides that in case of sickness, death, expiration of his office, or other disability of a trial judge, on request of the party preparing such bill, it shall be presented by the clerk to any other judge of the district, who shall act thereon and dispose of the matter in the time and manner required of the trial judge.

It was under this statute that the bill in this case was allowed and signed.

From the statutes and decisions cited we conclude that said bill is properly before us for consideration.

Such being the case, we find it necessary to look to it for the determination of only one question of fact, and that is that the promise sued on by defendant in error in his cross-petition was an oral one and not in writing. Perhaps even that fact may be inferred from the language used by defendant in error who was defendant below, in his cross-petition.

Plaintiff sued to quiet his title as against a mechanic's lien filed by the defendant, which set up a claim for masonry work done on the plaintiff's premises. Defendant answered and cross-petitioned, asking for judgment against the plaintiff on the following claim:

"Defendant, for his cross-petition, says that on or about the 14th day of January, 1911, he entered into a written agreement with one A. Karanofsky by which the said defendant agreed to provide all of the materials and perform all of the work for the masonry work of a two-family, frame dwelling being built for plaintiff on the premises described in plaintiff's petition according to the plans and specifications of one S. H. Weis, architect.

"Defendant further says that said written agreement provided that said A. Karanofsky was to pay to said defendant for the masonry work described in the agreement the sum of five hundred and fifty ($550) dollars, payable as follows:

"Two hundred and fifty ($250) dollars when ready for the joists; two hundred ($200) dollars when chimney and dividing wall is completed; and the final payment of one hundred ($100) dollars when all of the work described in said written agreement is completed.

"Defendant further says that in pursuance to said written agreement, he proceeded with said work until same was ready for the joists, and that said defendant was then entitled to his first payment of two hundred and fifty ($250) dollars, but that said A. Karanofsky, disregarding said written agreement, paid to him the sum of only one hundred and fifty ($150) dollars, and that on account of said A. Karanofsky disregarding his written agreement with him, the said defendant refused to proceed further with said work.

"Defendant further says that on or about the 27th day of February, 1911, said plaintiff agreed with said defendant to pay to the said defendant the balance of four hundred ($400) dollars due on said written agreement for the masonry work, as provided for in said written agreement, in consideration of said defendant completing the work described in said written agreement with A. Karanofsky.

"Defendant further says that in pursuance to said agreement with the said plaintiffs, he immediately proceeded to complete said masonry work and worked on same until March 9, 1911.

"Defendant further says that plaintiffs made no payments to him, whatsoever, on said work, but on the contrary, said plaintiffs, on or about the 9th day of March, 1911, notified said defendant that they would not pay said defendant anything for said work, and then and there repudiated their said agreement with said defendant, and thereupon said defendant refused to proceed further with said work.

"Defendant further says that the work and materials furnished by him, as aforesaid, was reasonably worth the sum of four hundred and ninety ($490) dollars, and that said defendant has received thereon the sum of one hundred and fifty ($150) dollars from A. Karanofsky, as aforesaid, and defendant says that there is now due him from said plaintiffs the sum of three hundred and forty ($340) dollars with interest thereon at the rate of 6 per cent. per annum from the 9th day of March, A. D. 1911."

There was a general denial to this cross-petition.

It thus appears that the promise relied upon was to answer for the debt, default or miscarriage of another.

There is no allegation that plaintiff was relieved from his original promise to pay A. Karanofsky for the same work which, the pleader says, was covered by the owner's contract with the principal contractor. So far as appears, plaintiff is still liable to pay the contractor for work done under the contract by the contractor's sub-contractor. The completion of this work by Stein is referable to the contract with Karanofsky and in compliance with it. Here the statute steps in, very wisely, as the result in this case shows, for there was some tall lying done in this case by somebody; by whom we need not inquire, for the statute provides for the case.

The case of *Birchell* v. *Neaster*, 36 Ohio St., 331, is applicable here. The syllabus of that case is as follows:

"A. let a contract to B. for furnishing materials and building a house for a stipulated sum. B. employed C. to furnish materials and to perform the labor of plastering. When the building was completed, except a small part of the plastering, C., in the absence of B., informed A. that he would not finish the plastering unless A. would agree to pay him; and A. replied, 'Finish the plastering and I will see you paid.' The obligations of B. to complete the house and to pay C. not being released, *Held*, that the verbal promise of A. to see C. paid was within the statute of frauds.

"The fact that there was due from A. to B., at the time the promise was made, a sum sufficient to pay the balance to C., did not take the promise out of the statute.

"In an action by C. against A., upon such promise, issue being joined by a general denial, it was competent for A. to rely upon the statute of frauds."

The application of the law here declared was invoked by plaintiff immediately upon the close of the statement by counsel for defendant of his claims under the cross-petition, by a motion that the case be taken from the jury and a judgment entered for the plaintiff.

The reason given in support of said motion by counsel for plaintiff did not touch the real point in the case, but the motion

was well- taken and should have been granted for the reasons stated in the case cited.

For error in overruling said motion the judgment is reversed and, proceeding to render the judgment which the court below should have rendered upon the conceded facts of the case, the cross-petition of the defendant is dismissed and judgment is rendered for the plaintiff in error on his petition.

Judgment reversed, and judgment for plaintiff in error.