NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HAILU ADERA,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2022-1074

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01040-KCD, Judge Kathryn C. Davis.

---

Decided:  June 2, 2023

---

HAILU ADERA, Alexandria, VA, pro se.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

---

Before CHEN, CLEVENGER, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Plaintiff-Appellant Hailu Adera appeals from a decision of the United States Court of Federal Claims ("Claims Court") dismissing his claims as barred by the statute of limitations. *Adera v. United States*, 155 Fed. Cl. 553 (2021) ("*Decision*"). Because Mr. Adera's claims are time barred, we *affirm*.

## BACKGROUND

Mr. Adera alleges that his physician certified that he became "totally and permanently disabled" by August 4, 1995.[1] App. 35.[2] In 2003, he applied for a disability discharge of his student loan through the guaranty agency for his loan, USA Funds. *Id.* USA Funds issued a favorable preliminary disability determination and informed Mr. Adera that his application would be sent to the Department of Education for review. *Id.* While the Department of Education was considering his application, Mr. Adera's student loan payments were suspended. *Id.* at 113. He submitted a second application for disability discharge through USA Funds in October 2004. *Id.* at 35. Mr. Adera's application was ultimately denied. *Id.* By September 2006, the Department reinstated his loan and demanded repayment. *Id.*

Mr. Adera complained to the Ombudsman responsible for facilitating a response to his student loan dispute. App. 35, 47–48. In November 2006, the Ombudsman summarized Mr. Adera's loan history, explaining that Mr. Adera's loan had been assigned to the "Educational Credit Management Corporation (ECMC)," App. 48, and that Mr. Adera applied for total and permanent disability with

---

[1] Mr. Adera's condition improved sometime around 2005, which allowed him to obtain employment with the Federal Government, where he continues to work. App. 35.

[2] App. refers to a non-confidential appendix filed by Mr. Adera, ECF No. 40.

ECMC in October 2003, and that ECMC "determined that [he] did not meet the medical review portion of the disability." App. 81–82.

Mr. Adera alleges that, nearly a decade later, the Department contradicted its earlier statements about ECMC and confirmed that USA Funds was the guarantor on his loan. App. 36. Mr. Adera then submitted inquiries under the Privacy Act and Freedom of Information Act ("FOIA"), through which he obtained several documents regarding his current claims. *Id.* Those documents showed the Department changed Mr. Adera's loan status from "defaulted" to "disabled," effective October 29, 2003, and denied his discharge application received in April 2005 because his physician had not shown he was disabled "at that time." *Id.*

Mr. Adera filed suit in the Claims Court on August 12, 2020, seeking to recover $26,360.97 in payments made on his student loan that he asserts should have been discharged under § 437(a) of the Higher Education Act ("HEA"), codified at 20 U.S.C. § 1087(a) with the applicable regulation at 34 C.F.R. § 682.402(c).[3] App. 17, 32–33, 37–38. Specifically, Mr. Adera argued that (1) the HEA creates a money-mandating claim; (2) the Department's demand for loan repayment was an illegal exaction; and (3) the Department's demand for loan repayment violated his right to due process under the Fifth Amendment. Appellant's Br. 2; App. 32–33. He alleged that he did not and could not have known of his rights before 2017 because the government's actions were "inherently unknowable." App. 36. He based this allegation on the Department's failure "to issue required notices informing [him] of its actions"

---

[3]    Because Mr. Adera submitted his final application for disability discharge of his loan debt in October 2004, all references to the HEA and its implementing regulation are to the versions in effect at that time. *See* 20 U.S.C. § 1087 (effective until June 30, 2006); 34 C.F.R. § 682.402 (effective until Sept. 7, 2006).

and its concealment of the status of his applications based on "contradictory and untrue statements about their handling and disposition." *Id.*

The Claims Court dismissed Mr. Adera's claims as barred by the six-year statute of limitations. *Decision*, 155 Fed. Cl. at 555; 28 U.S.C. § 2501. The Claims Court determined that Mr. Adera's claims accrued by at least November 2006—more than a decade before he filed his complaint—when the Ombudsman informed Mr. Adera that he did not meet the medical requirements for a disability discharge. *Decision*, 155 Fed. Cl. at 559. The Claims Court also rejected Mr. Adera's argument that the accrual of his claims should be suspended based on the Government's concealment of his claims or that his claims were inherently unknowable because the Department's September 2006 demand for repayment of Mr. Adera's loan and the November 2006 letter regarding his failure to meet the requirements for a disability discharge put him on notice that his discharge applications had been denied. *Id.* at 559–61.

Mr. Adera appeals from the dismissal of his claims. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

A claim under the Tucker Act, 28 U.S.C. § 1491, in the Claims Court must be brought "within six years after such claim first accrues." *Katzin v. United States*, 908 F.3d 1350, 1358 (Fed. Cir. 2018) (citing 28 U.S.C. § 2501); *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (holding that § 2501 sets forth a "more absolute, kind of limitations period" and is not subject to equitable tolling). "We review whether a claim is barred by the statute of limitations de novo[.]" *Katzin*, 908 F.3d at 1358 (citing *Brown v. United States*, 195 F.3d 1334, 1337 (Fed. Cir. 1999)). In reviewing the propriety of the court's dismissal, we accept as true the facts alleged in the complaint. *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1349 (Fed. Cir. 2011).

Mr. Adera argues that according to *Friedman v. United States*, 310 F.2d 381 (Ct. Cl. 1963), his claims would only accrue "when the agency official has rendered or refused a determination," which, he argues, never happened here. Appellant's Br. 12–16. Mr. Adera also challenges (1) whether the Secretary made a determination in April 2005; and (2) whether the Education Department conditionally discharged his loan in 2003 and never acted on that discharge. *Id.* at 17–20. Because the Department allegedly never made a decision or gave notice of that decision to Mr. Adera, he argues it remains an open question "[w]hether and when the Secretary completed the administrative process." *Id.* at 20.

The government argues that the Claims Court correctly found that Mr. Adera's claims are time barred. Appellee's Br. 12–15. Even if Mr. Adera never received formal notice that the Department denied his discharge applications, Mr. Adera received notice in September 2006 that the Department "reinstated [his] loan and demanded payment" and, thus, he should have known that his claims had accrued. *Id.* at 13–14; App. 35. The government further argues that Mr. Adera's subsequent negotiations with the Department about payments demonstrates that he knew his discharge had not been granted. Appellee's Br. 14; App. 35. This understanding is consistent with the Department's November 2006 letter to Mr. Adera indicating that he did not meet the medical review criteria for total and permanent disability. Appellee's Br. 14; App. 81–82.

We first discuss the legal framework to determine the accrual date of Mr. Adera's claims. Next, we analyze Mr. Adera's claims under that framework.

## A. Legal Framework

A claim against the United States first accrues on the date when "all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). Additionally, under the "accrual suspension" rule, "the

running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim." *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985) (internal quotation marks and citation omitted). As a judicial interpretation of a legislative enactment, however, this rule is "strictly and narrowly applied." *Id.* A plaintiff must show the defendant "concealed its acts with the result that plaintiff was unaware of their existence" or that the injury was "inherently unknowable" at the accrual date. *Id.* (internal quotation marks and citation omitted).

The Claims Court concluded that the earliest accrual date for claims arising under § 682.402(c)(1)(i) is when the Department of Education takes action on a plaintiff's application for loan discharge. *See, e.g.*, *Decision* at 559 (citing *Lankster v. United States*, 87 Fed. Cl. 747, 755 (2009)). We agree with the Claims Court's analysis regarding the accrual date.

The Claims Court in *Lankster* relied on our decisions in *Martinez*, 333 F.3d at 1313, and *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005). *Lankster*, 87 Fed. Cl. at 754. In *Martinez*, we concluded that Mr. Martinez's accrual suspension argument failed because he "was not unaware of the existence of his injury and the acts giving rise to his claim." 333 F.3d at 1319. Indeed, Mr. Martinez "was fully aware of the injury he had suffered at the time he was separated from active duty[.]" *Id.* By contrast, in *Chambers*, we held that a veteran's claim of entitlement to disability retirement pay did not accrue until the military board denied or refused to hear the veteran's claim because applying to the appropriate board was a prerequisite to securing disability retirement pay.[4]    417 F.3d at

---

[4]    While acknowledging that the denial of a veteran's petition—not his discharge—triggered the statute of limitations in that case, we also explained that circumstances may exist where the veteran's failure to petition for

ADERA v. US                                                    7

1224–25, 1227 ("Chambers' cause of action for disability retirement benefits in the Court of Federal Claims did not accrue until the ABCMR, the first competent board, finally denied his claim[.]").  Applying these principles in the context of loan discharges based on disability, the Claims Court reasoned that § 682.402(c)(1)(i) required a claimant to apply for a loan discharge before being eligible to bring suit, meaning that the accrual date could not arise until the Department acted on that application.  *Lankster*, 87 Fed. Cl. at 754–55.

20 U.S.C. § 1087(a) instructs that if a student borrower "becomes permanently and totally disabled (as determined in accordance with regulations of the Secretary),  then the Secretary shall discharge the borrower's liability on the loan."  Turning to the corresponding regulations, 34 C.F.R. § 682.402(c)(1)(i) states that "[i]f the borrower satisfies the criteria for a total and permanent disability discharge . . . the balance of the loan is discharged . . . and any payments received after the date the borrower became totally and permanently disabled as certified under § 682.402(c)(2), are returned to the sender."  Section 682.402(c)(1)(i) also states that "[i]f the Secretary has made an initial determination that the borrower is totally and permanently disabled," the loan will be "conditionally discharged for up to three years from the date that the borrower became totally and permanently disabled, as certified by a physician."  *Id.* We agree that Mr. Adera's claims to remedy an allegedly improper discharge decision do not accrue unless and until he applied to the Department for discharge of his loan and the Department denied or otherwise refused to act on his

---

disability retirement pay may trigger the statute of limitations, such as when the veteran "has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge." *Chambers*, 417 F.3d at 1226 (citing *Real v. United States*, 906 F.2d 1557, 1562 (Fed. Cir. 1990)).

application. *Decision*, 155 Fed. Cl. at 559 (citing *Lankster*, 87 Fed. Cl. at 755).

## B.  Mr. Adera's Claims

Because Mr. Adera did not bring his claims within six years of their accrual, we agree with the Claims Court that his claims are barred by 28 U.S.C. § 2501. *Decision*, 155 Fed. Cl. at 558.

Mr. Adera asserts that there is no evidence that the Department "ever rendered the mandatory decision," suggesting his claims never accrued for purposes of the six-year statute of limitations. Appellant's Br. 16. We disagree. Contrary to Mr. Adera's arguments on appeal, the Department *did* deny Mr. Adera's discharge application and notified him of that decision. Mr. Adera's first amended complaint alleges that the Department communicated in November 2006, via the Ombudsman, that his discharge application had been denied. App. 35; *see also* App. 81–82. He further alleges that the Education Department "reinstated" his loan and "demanded repayment" in September 2006, App. 35, consistent with the Department having denied his earlier applications. Based on his receipt of the Department's November 2006 letter and September 2006 loan reinstatement and demand for repayment, Mr. Adera "knew" that his discharge applications had been denied. Even if the Department never provided Mr. Adera formal notice of its decision denying his discharge applications, these events show that Mr. Adera "should have known" his discharge applications had been denied. *See Martinez*, 333 F.3d at 1319 (agreeing that "accrual of a claim . . . is suspended . . . until the claimant *knew or should have known* that the claim existed" (emphasis added)); *see also Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012) ("[A] plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995)). Yet Mr. Adera did not file his initial complaint until August 12, 2020, nearly 14 years

after he should have known about his claims in 2006. *Decision*, 155 Fed. Cl. at 556; App. 17.

Mr. Adera further alleges that "the government's actions were inherently unknowable" and that "the government concealed the status of [his] applications" until he received responses to his Privacy Act and FOIA requests between 2017 and 2019. App. 36. We agree with the Claims Court that this appears to be an attempt to invoke the accrual suspension rule. *Decision*, 155 Fed. Cl. at 558; *Welcker*, 752 F.2d at 1580 (requiring claimant to show defendant "concealed its acts with the result that plaintiff was unaware of their existence" or that the injury was "inherently unknowable" at the accrual date) (internal quotation marks omitted). Even if Mr. Adera is correct that he received additional information about the denial of his claims for the first time in 2017, that additional information alone does not support suspending the accrual of his claims. *See Martinez*, 333 F.3d at 1319 (declining to suspend accrual based on later acquisition of additional evidence because claimant knew he had been discharged). Rather, the salient facts are that Mr. Adera had sufficient knowledge that the Department denied his discharge applications by November 2006 and he did not file a claim until August 2020.

## CONCLUSION

We have considered Mr. Adera's other arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

## **AFFIRMED**

### COSTS

No costs.